**In re Richard Allen PARRISH, Sr., Debtor.**

**Bankruptcy No. 93–0201–BKC–3F7.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

June 28, 1994.

Thomas Lobello III, Jacksonville, FL, for Snap On Credit Corp.

Rudy Hernandez, Jacksonville, FL, for debtor.

### OPINION

JERRY A. FUNK, Bankruptcy Judge.

This case is before the Court on Snap On Credit's Motion for Relief from the Automatic Stay, filed on April 28, 1994. The Court conducted a hearing on May 23, 1994, and upon review of the evidence presented and the parties' memoranda, enters the following findings of fact and conclusions of law. Fed. R.Bankr.P. 7052. The Court has jurisdiction pursuant to 28 U.S.C. § 1334.

### FINDINGS OF FACT

Prior to filing bankruptcy, Snap On Credit Corporation ("Snap On") sold various tools and equipment to Debtor from August 3, 1989, through June 29, 1992. As part of that sale, Snap On and Debtor executed various purchase money security agreements. *See* Parrish Exhibit 1. When the Debtor filed a petition for bankruptcy in January 1993, the Debtor listed the tools purchased from Snap On. *See* Schedule D. The listed tools were valued at $6,302.00, which amount was secured in full by Snap On's lien.

Also, the Debtor listed the following items as exempt from the bankruptcy estate: household goods, supplies and furnishings, wearing apparel, and an automobile. The Debtor valued these items at $350.00. *See* Schedule C. On March 13, 1993, the Trustee filed a motion objecting to the Debtor's claim of exemption. Following Debtor's discharge on April 30, 1993, the Debtor and Trustee resolved the objections and consented to the entry of an order sustaining the Trustee's objections. The relevant portion of that Order entered on July 7, 1993, provides:

3. The Debtor shall purchase from the estate the non-exempt portion of said property at private sale for the sum of $1,500.00 payable at the rate of $100.00 per month, commencing August 15, 1993, and

continuing on the 15th of each and every month thereafter until paid in full. Upon completion of the sale, the Trustee shall comply with the provisions of Section 363(b) of the Bankruptcy Code.

The Order not only sustained the Trustee's objections, but also it allowed the Debtor to *repurchase* his "non-exempt" property from the Trustee for $1,500.00 payable at the rate of $100.00 per month. Further, the Order required an independent appraisal of the property previously claimed as exempt; and based upon that appraisal, it directed the Debtor to select items valued at $1,000.00 or less of the appraised value and those items would be entitled to exemption. Any property remaining would belong to the estate. The Order did not, however, specify those items sold as nonexempt.[1]

On April 28, 1994, Snap On filed a motion to lift the stay and asserted its rights against the Debtor's property. The Trustee responded to Snap On's motion by filing an adversary proceeding. Although the Court has yet to adjudicate the priority of Snap On's lien, the Trustee contends he has a superior lien interest in the very same tools in which Snap On claims an interest. Nonetheless it is clear that the Trustee did not challenge Snap On's lien interest at the time the Court entered the July Order, but instead waited until May 2, 1994, to file an appropriate action, over a year after the discharge date and four days after Snap On's motion.

### CONCLUSIONS OF LAW

At the commencement of the bankruptcy proceeding, all property belonging to a debtor becomes property of the estate unless the property qualifies for an exemption. *See* 11 U.S.C. § 541. Although a secured creditor may have an interest in a debtor's property, the filing of the petition operates to stay all enforcement actions, including those actions taken to enforce its lien. A secured creditor may file a motion for relief from stay should one of the following grounds apply: (1) if

---

1. It is the routine practice in this district for a trustee to sell property without first executing a bill of sale which specifies the items sold.

relief from the stay is necessary "for cause," or (2) if the property lacks equity and is unnecessary to reorganization.

The Debtor received a discharge on April 30, 1993. The automatic stay imposed routinely upon commencement of a case is terminated upon entry of the Debtors's discharge. 11 U.S.C. § 362(c)(2)(C). Although the stay was terminated upon discharge,[2] Snap On filed this motion, nevertheless, to determine its interest in the Debtor's property and to prevent unnecessary litigation, such as a potential challenge that Snap On violated the automatic stay. *See* 11 U.S.C. § 362(h).

The Trustee contends that although the tools are no longer estate property, the Court must first resolve the validity of Snap On's lien. According to the Trustee's argument, if Snap On lacks a security interest in the tools, there is no basis to lift the stay. Further, the Trustee contends that because the lien's validity remains unadjudicated, the Court should deny the motion until the pending adversary proceeding is resolved. For the reasons that follow, the Court disagrees.

Here, the Trustee does not own the property as he did at the commencement of the case. The Trustee elected to sell non-exempt property to the Debtor, and as such, the Trustee cannot succeed in opposing Snap On's motion by asserting possible defects in Snap On's lien. To be sure, the movant, which is Snap On, has the burden of persuasion on the motion to lift the stay. Yet the Trustee must demonstrate a valid interest in the *Debtor*'s property following the sale. Hence the Court begins its inquiry by considering the sale of estate property and the Trustee's interest in the tools after the sale, if any.

■ First, the Court shall consider the conveyance of the Trustee's property to the Debtor. A debtor's property belongs to the estate, but the Trustee has the authority to sell estate property. *See* 11 U.S.C. § 363(b). This includes selling property which is incumbered by a lien. Upon selling such impaired property, the Trustee may elect to sell

it "free and clear of liens." In such a case, the Trustee must satisfy the statutory requirements outlined in 11 U.S.C. § 363(f), which provide:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable bankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

In addition to these requirements, the Bankruptcy Rules require a Trustee to provide notice to the creditor asserting a lien that the Trustee intends to sell the property, including the creditor's interest. *See* Fed. R.Bankr.P. 6004. After notice and a hearing on a creditor's objections, the Trustee may proceed to sell the property free and clear of liens. Otherwise, if the notice procedure mandated by the Rules is bypassed, the sale does not extinguish that creditor's lien. The purchaser accedes to title, but does so *caveat emptor*.

In this case, the Trustee elected to sell the tools, but never filed a motion to sell the tools free and clear of liens. The Trustee had actual notice that Snap On claimed a lien interest; the Debtor acknowledged Snap On's lien in Schedule D. Prior to selling the tools and after appropriate notice, the Trustee or the Debtor could have filed an adversary proceeding to challenge Snap On's lien. If the Court were to determine that Snap On had a valid lien, the Trustee could have complied with the statutory requirements discussed *supra*, and by doing so, terminated Snap On's lien. If Snap On lacked a valid lien, then the Trustee could have sold the

---

**2.** In addition, the automatic stay was terminated upon sale to the Debtor. Once the property is

sold and is no longer property of the estate, the stay ceases. 11 U.S.C. § 362(c)(1).

property without compliance because Snap On would have no lien interest in the tools. Yet no such actions were taken prior to the sale to resolve Snap On's interest.

When a trustee sells property, the sale is ordinarily "as is" and without warranties either as to title or condition. More importantly, property sold by a trustee includes any existing and unsatisfied liens. Thus, the Debtor purchased the tools at his own risk and acquired whatever interest, if any, the Trustee had in the tools. If Snap On has a valid lien, as it contends in its motion, then the lien was not extinguished when the Trustee sold the property to the Debtor. As such, the Court need not decide—and does not decide today—the *validity* and *priority* of Snap On's lien interest. It is sufficient to the present inquiry that Snap On has, until a court decides otherwise, an unsatisfied claim against the tools.

The question that arises, then, which is the penultimate issue in this case, is whether the Trustee retained an interest in the estate property *after* the sale. Clearly, the Trustee had an interest in the property prior to the sale: the Trustee owned the property. In addition to ownership of the tools, a trustee has the "rights and powers" of a hypothetical creditor possessing a judicial lien which attaches upon commencement of the case; the law treats a trustee as a hypothetical lien creditor. *See* 11 U.S.C. § 544. Once the property is sold and relinquished by the Trustee, the property ceases to belong to the estate, and the Trustee's fictional hypothetical lien terminates on the date of sale.

Thus, if the Trustee retains a lien interest after the sale, it must be one of two possible liens: a reservation of a lien or a newly created lien. The Court's Order entered on July 7, 1993, does not demonstrate that the Trustee retained a lien; nor does the Order itself create a security interest in the tools. *See* Fla.Stat.Ann. § 679.203 (West 1993). Without a lien, the Trustee lacks a basis to defeat Snap On's motion to lift the stay.

In conclusion, the Court finds that: (1) the Trustee sold the property without notice as required by the Bankruptcy Rules; (2) the property is subject to any existing liens; (3) Snap On has a claim that it may assert, the validity of which remains to be determined; and (4) the Trustee did not demonstrate to this Court that he has retained a post-sale interest, although he may later demonstrate such an interest.[3]

If the tools were still property of the estate, the result may have been different. Yet they are not property of the estate. The Trustee made the decision to sell the tools without first determining the validity of Snap On's lien. The Court notes that this dilemma could have been avoided entirely if either the Trustee or the Debtor had filed an appropriate action before the sale. The Trustee could have eliminated Snap On's lien altogether by providing notice and a hearing in accordance with the rules. Having failed to follow the rules, the Trustee—who has not demonstrated a post-sale interest in the tools—cannot successfully delay Snap On's efforts to enforce its lien until a court determines the validity of that lien.

By lifting the stay, the Court does not determine the validity of the lien, but instead allows the parties to litigate that issue in an appropriate forum.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Snap On's Motion for Relief from Stay is **GRANTED.**

2. The Court shall enter a separate Order in accordance with these findings.

**DONE AND ORDERED.**

---

**3.** The Court does not consider whether the Trustee would have standing to do so.