[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-10994
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 4, 2010
JOHN LEY
CLERK

D. C. Docket No. 03-00354-CV-OC-10-GRJ


OLD WEST ANNUITY AND LIFE INSURANCE COMPANY,
et al.,

                                        Plaintiff-Counter-Claimant,

UNITED STATES OF AMERICA,

                        Intervenor Plaintiff-Counter-Defendant-Appellant,

                        versus

THE APOLLO GROUP,
a California corporation,

                                        Defendant-Appellee,

CAMP COAST TO COAST, INC.
THE AFFINITY GROUP, INC.,

                                Intervenor Plaintiffs-Appellees,

HANS SCHULZ,
a Trustee of the Schulz Family Trust, dated
1/1/88, et al.,

                                                Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 4, 2010)

Before EDMONDSON, BARKETT and BALDOCK,[*] Circuit Judges.


PER CURIAM:


This appeal is one by the Government from the district court's allocation of

surplus proceeds from the sale of real property in a foreclosure action. A

bankruptcy estate owned the real property; several creditors obtained relief from

the automatic stay to pursue this foreclosure action. The Government contends

that the district court erred in these ways: (1) by applying Florida law instead of

federal common law to determine whether the Government could recover from the

surplus proceeds for tax liens against the property for taxes owned by the debtor's

alleged alter ego; and (2) by distributing the surplus proceeds in satisfaction of the

Government's and Coast's liens instead of distributing the funds to the bankruptcy

_____

[*]Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit, sitting by designation.

2

trustee or applying the Bankruptcy Code's priority scheme.

We affirm.

# I. BACKGROUND

Old West Annuity and Life Insurance Company ("Old West") commenced this foreclosure action in Florida state court, seeking to foreclose its mortgage lien on a campground in Clermont, Florida (the "Campground") owned by Apollo Group, Inc. ("Apollo"). Apollo acquired the Campground in an auction associated with the bankruptcy of All Seasons Resorts, Inc. ("All Seasons"). Soon after Old West initiated the foreclosure action in a Florida state court, Apollo itself filed a petition under Chapter 11 of the Bankruptcy Code in the Northern District of Ohio. The filing of Apollo's bankruptcy petition automatically stayed the Florida foreclosure action. See 11 U.S.C. § 362. Two years later, the bankruptcy court granted Old West relief from the automatic stay, allowing Old West to assert its rights to the Campground by continuing with the foreclosure action.

Soon after, the Government filed a proof of claim for unpaid taxes in the bankruptcy court. The claim was based on unpaid tax assessments against Apollo for approximately $21,000 and unpaid assessments against All Seasons in excess

3

of $10 million. The Government contends that Apollo is the alter ego of All Seasons, making Apollo liable for All Seasons's delinquent taxes. The bankruptcy court granted the Government relief from the stay to establish and enforce tax liens against the Campground. The Government then locally recorded notice of its tax assessments and intervened in this foreclosure action in state court. The Government later removed this case (the foreclosure action) to federal district court in Florida.

The bankruptcy court then granted creditors Camp Coast to Coast, Inc. and Affinity Group, Inc. ("Coast") relief from the automatic stay. Coast had won a substantial money judgment against Apollo in a California case several years earlier. After Coast obtained relief from the stay, it domesticated its California judgment in Florida. Coast obtained an order from a Florida court declaring its judgment lien against Campground; the lien was recorded and thus perfected. Coast then intervened in this foreclosure action. The district court ordered the sale of the Campground, with the liens of Old West, the Government, and Coast to attach to the proceeds of the sale to the same extent, and in the same priority, that they attached to the property prior to the sale. The sale resulted in proceeds of $4.4 million.

By then, the bankruptcy court had converted the bankruptcy case from

4

Chapter 11 to Chapter 7. The Government sought and obtained an order from the bankruptcy court confirming that the conversion to Chapter 7 did not affect that court's earlier stay-relief orders. The proceedings in the foreclosure action continued: Old West undisputedly held the first priority lien on the Campground, and the Government undisputedly held the second priority lien for Apollo's taxes. The contentious issue in the district court was whether the Government could also recover for the taxes owed by Apollo's alleged alter ego, All Seasons; if so, the Government's recovery would deplete the remaining proceeds and preclude recovery by Coast. The district court granted Old West summary judgment and disbursed $2.9 million of the proceeds in satisfaction of its undisputed first priority claim. The district court set the alter ego issue for trial.

Meanwhile, the Government filed an administrative claim in the bankruptcy court for the bankruptcy estate's tax liabilities resulting from the sale of the Campground, which amounted to over $1.8 million (more than the remaining proceeds in the district court's register). The Government then filed a supplemental complaint in the district court seeking to have the funds in the district court's register returned to the bankruptcy trustee for distribution in accordance with the Bankruptcy Code. After that, the Government filed a motion specifically requesting the transfer of the money. Coast opposed the motion on standing

5

grounds; so the Government obtained an order from the bankruptcy court allowing the Government to represent the estate in the foreclosure proceedings in the district court to "assert such claims or rights on behalf of the estate which the Trustee may be entitled to assert in that action, including whether the bankruptcy estate has a senior right to the funds that are now held in the registry of that court." The bankruptcy court's order noted, however, that it "is not ruling, and has never previously ruled, on the issue of whether [11 U.S.C.] § 544(a) grants the estate priority over the lien claim of" Coast.

Now asserting the section 544(a) rights of the trustee, the Government continued to argue in the district court that the funds there should be returned to the bankruptcy court or, in the alternative, that the district court should distribute the remaining funds in accordance with the Bankruptcy Code.[1] The crux of the Government's argument was that the bankruptcy court did not intend its stay-relief orders to constitute an abandonment of the Campground property and that therefore the surplus proceeds remained the property of the estate and were subject

---

[1]In the district court, Coast argued that it was improper for the Government to assert the trustee's claims because those claims were unsupported by any pleadings. Although Coast mentions the lack of supporting pleading in a footnote in its appellate brief, Coast has not presented substantive argument on this point on appeal; the issue is therefore waived. See United States v. Flores, 572 F.3d 1254, 1265 n.3 (11th Cir. 2009) (noting that bare allegations without citation of "any authority" or supporting facts are waived); Marek v. Singletary, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned."). We express no opinion on the propriety of the Government's assertion of the trustee's rights in a motion mid-trial.

6

to the Bankruptcy Code.

The district court acknowledged that the trustee had not formally abandoned the Campground, but denied the Government's motion to transfer the surplus proceeds. Interpreting the bankruptcy court's orders, the district court determined that, pursuant to its concurrent jurisdiction over the Campground and in the absence of a contrary order from the bankruptcy court, its task was to adjudicate the rights of the parties before it and to distribute the remaining sales proceeds. The district court also rejected the Government's attempt to assert the trustee's strong arm powers under section 544, concluding that those powers can only defeat liens arising pre-petition.[2]

After holding a bench trial on the alter ego issue, the district court concluded that it must apply Florida law -- as opposed to the federal common law advocated by the Government -- when determining liability.[3] The district court concluded that the Government did not meet its burden to establish alter ego liability under Florida law; therefore, the court concluded that the Government was only entitled

_____

[2]The district court also noted that it was "very much aware of the real motivation behind the United States' motion": to receive an automatic disbursement of the funds without needing to litigate the alter ego question. The district court declined to allow "the United States at this very late stage in the litigation to forum shop and essentially negate this Court's proceedings, or to use its derivative Trustee standing in such a self-serving manner."

[3]The district court viewed this determination as critical because of the substantial differences between the Florida and federal common law alter ego tests.

to recover for Apollo's taxes (and not All Seasons's taxes) and that Coast was entitled to the remaining foreclosure funds.  The Government now appeals.

## II.  DISCUSSION

A.    Applicable Law to Determine Alter Ego Liability

At trial, the Government argued that Apollo is the alter ego of All Seasons, making Apollo liable for All Seasons's tax liabilities.  The Government contends that the district court should have applied the federal common law alter ego test instead of the test under Florida law.

The Government contends that, because the tax code is a nationwide federal program, this Court must apply the framework established by United States v. Kimbell Foods, Inc., 99 S. Ct. 1448, 1458-59 (1979), to determine whether federal common law or state law determines alter ego liability.  Coast, on the other hand, contends that Aquilino v. United States, 80 S. Ct. 1277 (1960), and Drye v. United States, 120 S. Ct. 474 (1999), require this Court to look to state law.  Other circuits appear uniform in their application of state law to this issue.  See, e.g., United States v. Scherping, 187 F.3d 796, 801-02 (8th Cir. 1999) ("Generally, federal

8

courts will look to state law to determine whether an entity is an alter ego of a taxpayer."); Floyd v. I.R.S., 151 F.3d 1295, 1298-99 (10th Cir. 1998) (applying state law); Towe Antique Ford Foundation v. I.R.S., 999 F.2d 1387, 1391 (9th Cir. 1993) ("We apply the law of the forum state in determining whether a corporation is an alter ego of the taxpayer."); Zahra Spiritual Trust v. United States, 910 F.2d 240, 242 (5th Cir. 1990) (" In determining whether the appellants are the alter egos of the taxpayers, and whether the taxpayer has an interest in property to which the government's tax lien attached, we look to state law.")

In Drye, the Supreme Court applied a two-part analysis to determine whether a federal tax lien could attach to an inheritance that had been disclaimed by the taxpayer under state law. 120 S. Ct. at 478, 481-83. The Court noted that, pursuant to the federal tax code, "the Government may impose a lien on any 'property' or 'rights to property' belonging to the taxpayer." Id. at 480. Courts, however, must look first to "state law to determine what rights the taxpayer has in the property the Government seeks to reach." Id. at 481. Then, federal law determines "whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." Id. at 481. If the Government is able to attach a lien to a state property interest qualifying either as property or a right to property under the federal tax code,

9

federal law then determines the priority of that lien. Aquilino, 80 S. Ct. at 1280-81.

The Government claims that we should view the alter ego question not as a question of property under the Aquilino and Drye framework, but instead as an issue of the taxpayer's identity -- an issue it believes a uniform federal common law standard should control per the test established by Kimbell Foods. But that inquiry is not the one Drye, a case which has not been overruled, instructs us to make. The question we must answer is this one: Despite being titled in Apollo's name, does the Campground belong to All Seasons or does All Seasons have rights to the Campground? A number of facts or legal theories might support the notion that All Seasons has a property interest in the Campground subject to the reach of the Government's tax lien. To determine what interests All Seasons might have in the Campground, if any, we must look to state law. Drye, 120 S. Ct. at 481. The Supreme Court has confirmed the continued validity of this framework as recently as 2002. See United States v. Craft, 122 S. Ct. 1414, 1420-21 (2002).

Applying this framework preserves the "proper balance between the legitimate and traditional interest which the State has in creating and defining the property interest of its citizens, and the necessity for a uniform administration of the federal revenue statutes." Aquilino, 80 S. Ct. at 1281. We decline the

10

Government's invitation to conclude -- against the clear weight of authority -- that alter ego analysis is not properly within the Aquilino and Drye framework. The district court therefore correctly concluded that Florida law supplied the pertinent alter ego test. The Government does not contend that, if Florida law controls, the district court incorrectly applied Florida law to the facts of this case. We therefore affirm the district court's judgment that the Government's claim on the Campground is limited to the taxes owed by Apollo.

B.      The District Court's Distribution of the Proceeds in Satisfaction of the
        Parties' Liens

As an alternative route to recover the surplus proceeds, the Government, asserting the section 544(a) rights of the bankruptcy trustee, also argues that the surplus proceeds from the Campground sale must be returned to the bankruptcy trustee or distributed by the district court according to the Bankruptcy Code's priorities because (despite the bankruptcy court's orders authorizing the Government and Coast to proceed) the bankruptcy estate has not formally abandoned the property. The Government contends that the bankruptcy trustee's hypothetical lien under 11 U.S.C. § 544(a) primes -- that is, takes priority over --

11

the Government's own lien and Coast's lien, both of which were perfected after the bankruptcy petition date although with authorization from the bankruptcy court. The Government says that, under the pertinent sections of the Bankruptcy Code, its administrative claim for taxes owed by the bankruptcy estate as a result of the Campground's sale is entitled to priority over both Coast's lien and its own lien for Apollo's old taxes.

Coast argues that the Bankruptcy Code is inapplicable to this foreclosure action when all the parties to the action have express authorization from the bankruptcy court to proceed against the collateral. In the alternative, Coast argues that, even under the Bankruptcy Code, it will be entitled to the disputed proceeds because it now has a perfected lien that is not subject to avoidance by the bankruptcy trustee.

We conclude that, even if the Government is correct that the district court should have transferred the surplus proceeds to the trustee to distribute according to the Bankruptcy Code or that the district court itself should have applied the Bankruptcy Code's priorities, Coast would be entitled to the disputed proceeds actually awarded to it by the district court. We therefore affirm the judgment of the district court.

Upon a debtor's filing of a bankruptcy petition, his legal and equitable

interests in property become the property of the bankruptcy estate. 11 U.S.C. § 541(a)(1). The filing of a petition also operates as an automatic stay, preventing the creation, perfection, or enforcement of any lien against the estate's property. 11 U.S.C. § 362(a)(4). The bankruptcy court may grant creditors relief from the stay after notice and a hearing. 11 U.S.C. § 362(d). A stay-relief order is a final order that is immediately appealable, Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1309 (11th Cir. 1982), and not subject to collateral attack, F.D.I.C. v. Shearson-American Exp., Inc., 996 F.2d 493, 498 (1st Cir. 1993). A bankruptcy court's order lifting the automatic stay is not equivalent to an abandonment of the estate's property. Catalano v. Comm'r, 279 F.3d 682, 686-87 (9th Cir. 2002). When a bankruptcy trustee abandons estate property, the estate is completely divested of any interest in the abandoned property. Id. On the other hand, when a bankruptcy court grants a creditor relief from the automatic stay for part of the estate's property, the bankruptcy estate retains a residual interest in that property. See id. But, a stay-relief order normally allows the relieved creditor to realize its interest in the collateral, Killebrew v. Brewer (In re Killebrew), 888 F.2d 1516, 1519-20 (5th Cir. 1989), by, for example, pursuing a foreclosure action. If such a foreclosure sale results in proceeds in excess of the relieved creditor's interest, the surplus proceeds normally belong to estate. Id.

13

That the trustee has not formally abandoned the Campground is undisputed, but the lack of formal abandonment is not dispositive in this case. For the Campground, the bankruptcy court granted three creditors relief from the automatic stay. The bankruptcy court's order permitted Old West to "assert[] its rights to" the Campground, "including proceeding with the foreclosure sale." The order pertinent to the Government allowed the Government to "assert and to enforce its claim in the Florida foreclosure action to the extent permitted by that court." The order for Coast allowed Coast to "perfect its lien against the [Campground] and to participate in all respect as a party in the Foreclosure Litigation and/or to initiate or participate in any other foreclosure action against the [Campground]." The order for Coast further stated that it appeared to the bankruptcy court that Apollo "has no equity in the [Campground] and the reorganization of Debtor is unlikely, and that therefore, the [Campground] is not necessary for an effective reorganization."

The bankruptcy court's stay-relief orders may seem unusual or even confused to some people, but those orders remain valid and are not subject to collateral attack in this case. See Shearson-American Exp., 996 F.2d at 498 ("[O]rders of the bankruptcy court modifying the stay . . . , even if erroneous, are entitled to respect and are not subject to collateral attack."). The appropriate forum

14

to challenge the stay-relief orders was the bankruptcy court; the Government and Coast proceeded against the collateral in the district court as authorized by the bankruptcy court's orders. The somewhat exceptional circumstances before us reflect the results of these earlier orders.

The district court properly determined that the Government had the second priority lien on the Campground for Apollo's taxes and that Coast had the third priority lien. The question we must resolve is what effect, if any, the Government's assertion of the trustee's "strong arm" power under section 544(a) has on the priorities for distribution of the proceeds. In addition to acting as an automatic stay, the filing of a bankruptcy petition grants the bankruptcy trustee the rights and powers of a hypothetical perfected judgment lien creditor.[4] 11 U.S.C. § 544(a). This status attaches "as of the commencement of the case," id., and does not terminate until the property ceases being the property of the estate, In re Parrish, 171 B.R. 138, 141 (Bankr. M.D. Fla. 1994). Because the Campground remains the property of the estate, the trustee's hypothetical lien seems to attach to the property. State law generally determines the rights attributable to such a lien creditor. Weed v. Washington (In re Washington), 242 F.3d 1320, 1322-23 (11th Cir. 2001). And under Florida law, the trustee's hypothetical judgment lien will

---

[4]Florida law also includes "[a] trustee in bankruptcy from the date of the filing of the petition" within the definition of a "Lien creditor." Fla. Stat. § 679.1021(zz).

15

generally prime any judgment liens arising later in time, including Coast's and the United States' in this case.  See Franklin Fin., Inc. v. White, 932 So. 2d 434, 436-37 (Fla. 4th Dist. Ct. App. 2006) ("When a judgment is recorded, the judgment lien takes priority over any liens recorded thereafter.").

But, accepting for the sake of argument that the trustee's lien remains attached to the Campground, establishing the priority of that hypothetical lien does little to resolve this case ultimately.  The trustee's lien is no actual lien -- it is not monetized; it is a tool intended to bring assets into the bankruptcy estate for distribution according to the Bankruptcy Code.  See Kapila v. Atl. Mortgage & Inv. Corp. (In re Halabi), 184 F.3d 1335, 1337 (11th Cir. 1999).  The Bankruptcy Code gives the trustee other tools as well.  Section 544(a) also allows the trustee to avoid a transfer of the debtor's property that is avoidable by a creditor holding a judgment lien.  In the typical bankruptcy case, the trustee will invoke section 544(a) to avoid any interest inferior to his own.  But, the trustee can only use the section 544(a) avoidance power to avoid pre-petition transfers.[5]   11 U.S.C. § 544(a) ("The trustee . . . may avoid any transfer of property of the debtor . . . ." (emphasis added)); 5 Collier on Bankruptcy ¶ 544.01 (2009); see also In re

_____

[5]We accept that section 549 allows the trustee to avoid post-petition transfers in certain circumstances.  11 U.S.C. § 549(a) ("[T]he trustee may avoid a transfer of property of the estate . . . ." (emphasis added)).  But the section 549 avoidance power is inapplicable in this case because the bankruptcy court authorized the transactions.  11 U.S.C. § 549(a)(2)(B).

16

<u>Branam</u>, 247 B.R. 440, 444 (Bankr. E.D. Tenn. 2000); <u>In re Stoops</u>, 209 B.R. 1, 3 (Bankr. M.D. Fla. 1997). Coast's lien and the United States' lien arose post-petition and are therefore out of the reach of the section 554(a) avoidance power. In this case, the Government does not even attempt to assert the trustee's section 544(a) avoidance power.

The unusual procedural history of this case thus leads to an unusual result: even when we assume that the trustee has a hypothetical lien that takes priority over the two secured creditors' liens, the secured creditors' liens cannot be avoided by the trustee. For better or for worse, Coast and the Government (in its non-trustee capacity) are now secured creditors. <u>Cf.</u> <u>In re Concord Mill Ltd. Partnership</u>, 136 B.R. 896, 901-02 (Bankr. D. Mass. 1992) (concluding creditor that perfected lien post-petition during relief from the automatic stay was allowed to keep perfected interest after reimposition of stay); <u>In re Spaude,</u> 112 B.R. 304, 307 (Bankr. D. Minn. 1990) ("Where a creditor has invoked remedies and settled its property rights in good faith reliance upon the termination of the automatic stay in Bankruptcy, the Court should not and may not invoke its broad equitable powers to void the results of the creditor's action-even if doing so would enable the debtor to make full use of statutory remedies previously unavailable to him under the Code."). And Coast and the United States remain secured creditors under

17

bankruptcy law -- regardless of whether that law is applied by the district court or by the bankruptcy court if the surplus proceeds were transferred to the trustee -- because the trustee cannot avoid their liens under section 544(a) or 549(a).

Under the Bankruptcy Code, secured creditors are generally entitled to be paid from their collateral. See 11 U.S.C. § 725; Monarch Air Serv., Inc. v. Solow (In re Midway Airlines, Inc.), 383 F.3d 663, 669 (7th Cir. 2004) ("Secured claims are paid (or the collateral returned) before any distribution is made to priority claimants or to unsecured general creditors."). The Government's tax claim on the gain associated with the sale of the Campground is an administrative claim that is entitled to priority over unsecured claims under 11 U.S.C. § 726(a)(1). "Administrative expenses, however, do not have priority over secured claims." Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 120 S. Ct. 1942, 1946 (2000). Therefore, even if the Government is correct that bankruptcy law governs this case, the Government cannot recover on its administrative tax claim to the detriment of Coast. [6]

## III. CONCLUSION

[6]The government is before this Court representing the interests of the trustee. The only basis the Government (as trustee) asserts for divesting Coast of its priority is that under the Bankruptcy Code, administrative claims are superior to Coast's claim. Given the circumstances here, we reject that contention, but we only decide the issue presented to us.

We affirm the district court's conclusion that Florida law determines the alter ego liability issue in this case. Because we conclude Coast is entitled to the disputed surplus proceeds even <u>if</u> the Government is correct about the applicability of bankruptcy law to this action, we affirm the judgment of the district court.

AFFIRMED.