INSITUFORM TECHNOLOGIES, LLC, et al., Plaintiffs,

v.

COSMIC TOPHAT, LLC, et al., Defendants.

Civil Action No. 1:08–CV–333–TCB.

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 9, 2013.

**1338**

Alan H. Norman, Dean L. Franklin, Matthew Arthur Braunel, Michael L. Nepple, Thompson Coburn, LLP, St. Louis, MO, Jeffrey C. Morgan, Barnes & Thornburg LLP, Puja R. Patel, Troutman Sanders, LLP, Atlanta, GA, for Plaintiff.

Daniel Arthur Kent, Kent Law, P.C., Alpharetta, GA, Matthew Mahoney Lubozynski, William Henry Boice, Kilpatrick Townsend & Stockton, LLP, Steven D. Moore, Kilpatrick Stockton, Atlanta, GA, for Defendant.

### ORDER

TIMOTHY C. BATTEN, SR., District Judge.

This case is before the Court on the motion for summary judgment [862] filed by Plaintiffs Insituform Technologies, LLC and INA Acquisition Corp.

## I. Background

This is a patent-infringement suit that began in the U.S. District Court for the Eastern District of Virginia in November 2007. The original Plaintiffs were Insituform Technologies, Inc. and Insituform (Netherlands), B.V., Inc. Insituform (Netherlands), B.V., Inc. has assigned its rights in the patents-in-suit to INA Acquisition Corp., and Insituform Technologies, Inc. has converted to a limited liability company. Thus, the current Plaintiffs are INA Acquisition Corp. and Insituform Technologies, LLC. In any event, Plaintiffs will be referred to collectively as "Insituform."

Insituform holds several patents relating to a process it developed to repair sewage pipelines without incurring the expenses normally associated with such repair. In particular, Insituform's process allows pipelines to be repaired without the expense or inconvenience of digging into the ground. This is accomplished by installing a "cured-in-place pipeline" or "CIPP." A CIPP is a flexible liner that is soaked in resin and inserted into an existing pipeline. When the resin cures, the CIPP hardens to form a "pipe within a pipe," thus restoring the structural integrity of the pipeline.

Defendant Cosmic–Sondermaschinenbau, GmbH ("Cosmic–Austria") is an Austrian corporation that formerly manufactured a competing CIPP product known as the Cosmic TopHat. The claims in this action arise out of Insituform's allegation that the Cosmic TopHat infringes its patents. Defendant Johann Kübel is Cosmic–Austria's owner and president, and Defendant Cosmic TopHat, LLC is a California limited liability company that is also owned and controlled by Kübel.

After being added as a Defendant, Cosmic–Austria (at Kübel's direction) actively defended against Insituform's claims by, inter alia, participating in discovery, responding to Insituform's motion for a more definite statement on Cosmic–Austria's counterclaims, responding to Insituform's infringement contentions pursuant to Patent Local Rule 4.2, serving a disclosure of invalidity contentions pursuant to Patent Local Rule 4.3, filing a claim-construction brief, responding to Insituform's claim-construction brief, participating in a claim-construction hearing, and filing a post-hearing brief.

On August 26, 2009, Insituform moved for entry of default judgment against Cosmic–Austria as a sanction for discovery misconduct. The motion argued that an entry of default was appropriate because, inter alia, Cosmic–Austria had not permitted Insituform to fully inspect its Austrian facilities despite being ordered to do so and had withheld information in response to an interrogatory that the Court had ordered it to answer.

On February 19, 2010, after extensive briefing, the Court denied Insituform's motion for entry of default. The Court found that Cosmic–Austria was guilty of bad-faith discovery misconduct but concluded that lesser sanctions would suffice. Specifically, the Court ordered Cosmic–Austria to pay the attorneys' fees Insituform incurred as a result of its discovery misconduct.

On May 28, 2010, Insituform moved for reconsideration of the Court's February 19, 2010 order based on Cosmic–Austria's failure to pay any of its attorneys' fees. On November 22, 2010, the Court granted Insituform's motion for reconsideration. The Court found that although Cosmic–Austria had ample opportunity, it failed to make any payment toward Insituform's attorneys' fees or to demonstrate its inability to pay. As a result, the Court found it necessary to impose a more severe sanction and entered default against Cosmic–Austria on Insituform's second amended complaint.

When the Court entered default against Cosmic–Austria, it also directed the parties to brief and submit evidence on damages. On June 8, 2011, after extensive briefing and a hearing, the Court issued an order in which it calculated a reasonable royalty of $136 per TopHat sold by Cosmic–Austria. The Court then multiplied that royalty by 29,516 sales, subtracted $51,600 for royalties already paid to Insituform, and entered a default judgment in the amount of $3,962,576.

On July 11, 2011, Cosmic–Austria filed a motion for reconsideration of the Court's June 8, 2011 order on damages. On March 29, 2012, 850 F.Supp.2d 1336 (N.D.Ga.2012), the Court denied that motion, and on August 9, 2012, the Court directed the clerk to enter final judgment against Cosmic–Austria and in favor of Insituform based upon the $136 reasonable royalty it had previously calculated.

In the present motion, Insituform seeks summary judgment on its inducement claim against Kübel. It also seeks summary judgment on the issue of whether Cosmic TopHat is merely the alter ego of Kübel such that piercing the corporate veil is appropriate.

## II. Discussion

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). There is a "genuine" dis-

pute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir.2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In making this determination, however, "a court may not weigh conflicting evidence or make credibility determinations of its own." *Id.* Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*

"The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party would have the burden of proof at trial, that party "must show *affirmatively* the absence of a genuine issue of material fact: it 'must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.'" *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir.1991) (quoting *Celotex*, 477 U.S. at 331, 106 S.Ct. 2548). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting *Celotex*, 477 U.S. at 331, 106 S.Ct. 2548).

### A. Kübel's Liability for Inducement

■ Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." In count IX of the corrected third amended complaint, Insituform claims that Kübel actively induced Cosmic–Austria's infringement of Insituform's patents. In order to prevail on that claim, Insituform must first show that Cosmic–Austria actually infringed its patents. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308 (Fed.Cir.2012) ("[I]nducement gives rise to liability only if the inducement leads to actual infringement."). In addition, Insituform must show that Kübel knew that Cosmic–Austria's acts constituted patent infringement. *See Global–Tech Appliances, Inc. v. SEB S.A.*, —— U.S. ——, 131 S.Ct. 2060, 2068, 179 L.Ed.2d 1167 (2011) ("[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement.").

### 1. Cosmic–Austria's Infringement

Insituform contends that the default judgment entered against Cosmic–Austria establishes Cosmic–Austria's infringement for purposes of its inducement claims against Kübel. This is the only "evidence" relied upon by Insituform to establish Cosmic–Austria's actual infringement. In its reply brief, Insituform acknowledges that "[t]his is analogous to a collateral estoppel argument." Curiously, however, Insituform "is not arguing that the 'estoppel' is preclusive—just that it is admissible evidence for purposes of a summary judgment motion."

Insituform has failed to cite any authority for the proposition that a default judgment may be used as evidence of its underlying allegations even if the judgment has no preclusive effect. Therefore, the Court declines to consider the default judgment entered against Cosmic–Austria in this case as "evidence." Either the judgment has preclusive effect as to Kübel or it does not, and it is to that issue that the Court now turns.

■■■ "Res judicata comes in two forms: claim preclusion (traditional 'res judicata') and issue preclusion (also known as 'collateral estoppel')." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir.2011). Issue preclusion or collateral estoppel forecloses the relitigation of issues that have been previously litigated and decided. *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1316 (11th Cir.2003). When the prior decision was made by a federal court, federal preclusion principles apply. *Id.* And when the prior decision was made by the same court, the court may apply preclusion principles sua sponte. *See Shurick v. Boeing Co.*, 623 F.3d 1114, 1116 n. 2 (11th Cir. 2010). In this case, the relevant prior decision was made by this Court; thus, the Court may raise the issue of collateral estoppel sua sponte, and federal preclusion principles will apply.

■■■ Before turning to the elements of collateral estoppel, the Court must determine whether the default judgment entered against Cosmic–Austria may be used against Kübel. Collateral estoppel can apply only "when the parties are the same (or in privity)." *EEOC v. Pemco, Aeroplex, Inc.*, 383 F.3d 1280, 1285 (11th Cir. 2004) (quoting *In re Se. Banking Corp.*, 69 F.3d 1539, 1553 (11th Cir.1995)). "If identity or privity of parties cannot be established, then there is no need to examine the other factors in determining whether . . . collateral estoppel applies." *Id.*

■■■ " 'Privity' is a flexible legal term, comprising several different types of relationships and generally applying when a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." *Id.* at 1286. Of particular relevance here,

"a nonparty is bound by a judgment if she 'assume[d] control' over the litigation in which that judgment was rendered." *Taylor v. Sturgell*, 553 U.S. 880, 895, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008). Applying this principle, the Eleventh Circuit has held that an individual was in privity with a corporation where he "had complete control over the prior litigation as the Companies' president and sole shareholder." *Griswold v. Cnty. of Hillsborough*, 598 F.3d 1289, 1293 (11th Cir.2010). Likewise, in this case, Kübel is Cosmic–Austria's president and sole owner, and he had complete control over Cosmic–Austria's defense against Insituform's claims of patent infringement. Therefore, Kübel is in privity with Cosmic–Austria such that the default judgment against Cosmic–Austria may be given preclusive effect as to Kübel.

■■■ With privity established, the Court now turns to the elements of collateral estoppel. Under federal law, the following requirements must be met before the doctrine applies:

> (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*CSX Transp.*, 327 F.3d at 1316 (quoting *I.A. Durbin, Inc. v. Jefferson National Bank*, 793 F.2d 1541, 1549 (11th Cir.1986)). Even if the doctrine is available, however, the decision to apply it involves equitable considerations and lies within the discretion of the district court. *In re McWhorter*, 887 F.2d 1564, 1566 (11th Cir.1989).

██ The issue currently at stake is whether Cosmic–Austria infringed Insituform's patents. The same issue was raised by Insituform's claims against Cosmic–Austria, and its resolution is a critical and necessary part of the judgment on those claims. Thus, collateral estoppel will be available as long as Kübel had a full and fair opportunity to litigate the issue against Insituform, and the issue was actually litigated. For the following reasons, those requirements are also satisfied.

First, Kübel had a full and fair opportunity to litigate the relevant issue against Insituform. He controlled Cosmic–Austria in actively defending against Insituform's claims for two years before the Court entered default as a sanction for discovery misconduct. This defense included filing contentions of patent invalidity, filing claim-construction briefs, and participating in a claim-construction hearing. Thus, Kübel had ample opportunity to contend that Cosmic–Austria did not infringe Insituform's patents.

██ Turning to the final requirement, a default judgment ordinarily will not support the application of collateral estoppel because the issues are not actually litigated. *In re Bush*, 62 F.3d 1319, 1323 (11th Cir.1995). However, this general rule assumes that a defaulting defendant has not substantially participated in the lawsuit. *See id.* at 1324. Where the converse is true, and the defendant is defaulted as a sanction for dilatory or obstructive conduct, the party's "abuse of the judicial process must not be rewarded by a blind application of the general rule denying collateral estoppel effect to a default judgment." *Id.* In these circumstances, the "actually litigated" requirement is met, and it is within the district court's discretion to apply collateral estoppel. *See id.* at 1324–25.

The facts of this case fit squarely within the exception recognized in *Bush*. As discussed above, Kübel substantially participated in the lawsuit for two years before the Court entered default against Cosmic–Austria as a sanction for his defiant and obstructive conduct on its behalf. Thus, the "actually litigated" requirement is met, and Kübel's "abuse of the judicial process" will not be rewarded by giving him an underserved "second bite at the apple." *Id.* at 1324.

The Court also finds that equitable considerations warrant the application of collateral estoppel against Kübel. The Court did not enter a default judgment against Cosmic–Austria when Insituform first asked for that sanction. Instead, the Court gave Cosmic–Austria an opportunity to remedy its discovery abuses through the payment of monetary sanctions. Cosmic–Austria (and hence Kübel) was on notice that a default was possible if it failed to comply with those sanctions, and Kübel should have known that if a default was entered against Cosmic–Austria he might be precluded from relitigating the issues raised by Insituform's claims. Consequently, it is not unfair to apply collateral estoppel against Kübel.

In sum, the Court's decision to enter a default judgment in favor of Insituform and against Cosmic–Austria precludes Kübel from arguing that Cosmic–Austria did not infringe Insituform's valid and enforceable patents. Consequently, this element of Insituform's inducement claim against Kübel is satisfied.

## 2. Kübel's Knowledge

Insituform argues that there is no genuine dispute as to whether Kübel knowingly induced Cosmic–Austria's infringement because Kübel was aware of the Court's en-

try of default against Cosmic–Austria on November 10, 2010, and Cosmic–Austria continued to sell the TopHat product in the United States (at Kübel's direction) after that date. In response, Kübel repeats his argument that Cosmic–Austria's default is not binding upon him. He further argues that he "has always believed, and continues to believe, that Cosmic's products do not infringe [Insituform's] asserted patents."

 The Court agrees with Insituform that there is no genuine dispute as to Kübel's knowledge that Cosmic–Austria's sales of the TopHat product in the United States after November 10, 2010 constituted patent infringement. As discussed above, because of Kübel's privity with Cosmic–Austria and his involvement in the case leading to Cosmic–Austria's default, that default is binding upon him. Moreover, even if the default were not binding upon Kübel, he knowingly induced Cosmic–Austria to commit acts that, as to Cosmic–Austria, constituted patent infringement as a matter of law. Therefore, Kübel "knowingly and intentionally induced another party's direct infringement." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1304 (Fed.Cir.2012). Consequently, Insituform is entitled to summary judgment on its inducement claim against Kübel insofar as it relates to sales that occurred after November 10, 2010.

 Insituform also argues that there is circumstantial evidence that Kübel knowingly induced Cosmic–Austria's infringement before November 10, 2010. Specifically, Insituform notes that Kübel did not obtain an opinion of counsel on the issue of infringement and that his conduct in the litigation prior to November 10, 2010 was often dishonest and evasive. But while opinion-of-counsel evidence is relevant to the issue of intent, "there is no affirmative duty to seek opinion of counsel regarding infringement, and ... it is improper to allow an 'adverse inference or evidentiary presumption that such an opinion would have been unfavorable.'" *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed.Cir.2008) (quoting *Knorr–Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1346 (Fed.Cir.2004)). Moreover, despite Kübel's dishonest and evasive conduct in this litigation, a reasonable jury could find that before the default was entered against Cosmic–Austria, he did not know that Cosmic–Austria's sales of the TopHat product constituted patent infringement. Therefore, Insituform is not entitled to summary judgment on its inducement claim against Kübel insofar as it relates to sales that occurred on or before November 10, 2010.

### 3. Damages

In its third supplemental response to Insituform's first interrogatories, dated December 6, 2010, Cosmic–Austria represented that it had sold 26,656 TopHats in the United States since 2001. In its fourth supplemental response to Insituform's first interrogatories, dated April 11, 2011, Cosmic–Austria represented that it had sold 29,516 TopHats in the United States since 2001. Kübel has offered no evidence to refute these numbers. Indeed, he personally verified that Cosmic–Austria's answers to Insituform's first interrogatories were accurate. Thus, there is no genuine dispute that Cosmic–Austria sold at least 2,860 TopHats after November 10, 2010.

 As an inducer, Kübel is jointly and severally liable for these sales. *See Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1361

(Fed.Cir.2001) ("A party that induces or contributes to infringement is jointly and severally liable with the direct infringer for all general damages."). Moreover, as part of the default judgment against Cosmic–Austria, the Court determined that the appropriate measure of damages is a reasonable royalty of $136 per TopHat sold, and Kübel is bound by that judgment. Therefore, Kübel is jointly and severally liable for $388,960 of the damages awarded against Cosmic–Austria.

## B. Alter–Ego Liability

Insituform seeks summary judgment on the issue of whether Cosmic TopHat is merely the alter ego of Kübel such that piercing the corporate veil is appropriate. Although all of Insituform's claims against Cosmic TopHat and Kübel arise under federal patent law, this issue is governed by Georgia law. *See Old W. Annuity & Life Ins. Co. v. Apollo Grp.*, 605 F.3d 856, 861–62 (11th Cir.2010) (applying Florida law to determine the alter-ego liability of a taxpayer); *see also In re Schwarzkopf*, 626 F.3d 1032, 1037 (9th Cir.2010) ("In determining whether alter ego liability applies, we apply the law of the forum state.").

■ However, even where this Court must apply state substantive law, the standard for summary judgment is governed by the Federal Rules of Civil Procedure. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 n. 7, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) ("It is settled that if the Rule in point is consonant with the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution, the Federal Rule applies regardless of contrary state law."). Consequently, the Court need not consider Kübel and Cosmic TopHat's argument that under Georgia law it is never appropriate to grant summary judgment in favor of a plaintiff on the issue of alter ego liability. Under the Federal Rules, the Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). So long as that standard is satisfied, Insituform will be entitled to summary judgment on this issue.[1]

■ Turning to the merits of this issue, it seems that Insituform wants to pierce the corporate veil in both directions. That is, it wants to hold Kübel liable for Cosmic TopHat's infringement (traditional piercing), and it wants to hold Cosmic TopHat liable for Kübel's infringement (reverse piercing). However, the Georgia Supreme Court has "reject[ed] reverse piercing, at least to the extent that it would allow an 'outsider,' such as a third-party creditor, to pierce the veil in order to reach a corporation's assets to satisfy claims against an individual corporate insider." *Acree v. McMahan*, 276 Ga. 880, 585 S.E.2d 873, 874 (2003). Thus, to the extent Insituform seeks to pierce the corporate veil in reverse, its motion must be denied. Thus, the Court will consider Insituform's alter-ego arguments only under a traditional-piercing theory.

■ Like a corporate shareholder, a member of an LLC "is considered separate from the company and is not a proper party to a proceeding by or against a

---

1. Moreover, even under Georgia law, Kübel and Cosmic TopHat's argument would be meritless. *See Gardner v. Marcum*, 292 Ga. App. 369, 665 S.E.2d 336, 339–40 (2008) (reversing summary judgment in favor of the plaintiff on the issue of alter-ego liability not because such judgment would never be appropriate but because the plaintiff failed to establish alter-ego liability as a matter of law).

limited liability company, solely by reason of being a member of the limited liability company." *Global Diagnostic Dev., LLC v. Diagnostic Imaging of Atlanta,* 284 Ga. App. 66, 643 S.E.2d 338, 341 (2007). In other words, the member is " 'veiled' from personal liability for the debts of the separately maintained LLC entity." *Bonner v. Brunson,* 262 Ga.App. 521, 585 S.E.2d 917, 918 (2003). "In order to pierce this veil and hold [the member] personally liable for the alleged debt of the LLC, there must be evidence that he abused the forms by which the LLC was maintained as a separate legal entity apart from his personal business." *Id.* Specifically, "[t]he plaintiff must show that the defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control." *Sun Nurseries, Inc. v. Lake Erma, LLC,* 316 Ga.App. 832, 730 S.E.2d 556, 564 (2012) (alteration in original) (quoting *Christopher v. Sinyard,* 313 Ga.App. 866, 723 S.E.2d 78, 80 (2012)).

■ Insituform first argues that alter-ego liability is appropriate because Cosmic TopHat failed to observe corporate formalities such as meeting and record-keeping. However, "[t]he failure of a limited liability company to observe formalities relating to the exercise of its powers or the management of its business and affairs is not a ground for imposing personal liability on a member, manager, agent, or employee of the limited liability company for liabilities of the limited liability company." O.C.G.A. § 14-11-314. Thus, the fact that Cosmic TopHat failed to observe corporate formalities does not support imposing alter-ego liability.

■ Next, Insituform argues that alter-ego liability is appropriate because Kü-bel failed to treat Cosmic TopHat as a separate entity from himself. In support of this argument, Insituform relies on evidence that (1) customers paid Cosmic–Austria directly for products distributed by Cosmic TopHat; (2) Cosmic TopHat paid the duty tax for Cosmic–Austria's sales into the United States; and (3) Kübel controlled the cash flow between the entities and ensured that Cosmic TopHat had only enough cash to pay its expenses. But while these facts may show that Kübel failed to keep the Cosmic entities separate from each other, they do not show that he failed to keep Cosmic TopHat separate from himself. *See Bonner,* 585 S.E.2d at 918 ("[E]vidence of overpayment to [the defendant's] corporation would not be evidence that [the defendant], individually, confused his personal affairs with the LLC."). Moreover, the mere fact that Kübel controlled the two entities does not support imposing alter-ego liability. *See Global Diagnostic,* 643 S.E.2d at 341 ("[S]ole ownership of a corporation by one person is not a factor, nor is the fact that the sole owner uses and controls it to promote his ends."). In short, Insituform has cited no evidence that actually supports its argument that Kübel failed to treat Cosmic TopHat as an entity separate from himself.

■ In a related argument, Insituform contends that alter-ego liability is appropriate because Cosmic TopHat was undercapitalized. But "[f]or undercapitalization to justify piercing the veil, 'it must be coupled with evidence of an intent at the time of the capitalization to improperly avoid future debts of the [LLC].'" *Milk v. Total Pay & HR Solutions, Inc.,* 280 Ga.App. 449, 453, 634 S.E.2d 208, 212 (2006) (second alteration in original). Insituform has identified no such evidence

here; thus, the fact that Cosmic TopHat was undercapitalized does not support entering summary judgment in favor of Insituform on this issue.

Finally, Insituform points to Kübel's prior conduct in this litigation and argues that alter-ego liability is necessary to "prevent the injustice that would arise if Mr. Kübel transferred or disposed of assets through or via Cosmic TopHat, LLC in an effort to defeat collection activities." However, such misconduct could only be combated through reverse piercing, which the Georgia Supreme Court has rejected, in part because "more traditional theories of conversion, fraudulent conveyance of assets, respondeat superior, and agency law are adequate to deal with situations where one seeks to recover from a corporation for the wrongful conduct committed by a controlling stockholder without the necessity to invent a new theory of liability." *Acree*, 585 S.E.2d at 875 (quoting *Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557, 1577 (10th Cir.1990)).

Ultimately, even if Insituform's fears are warranted, it has failed to establish as a matter of law that Kübel "disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control." *Sun Nurseries*, 730 S.E.2d at 564 (quoting *Christopher*, 723 S.E.2d at 80). Consequently, Insituform is not entitled to summary judgment on the issue of Kübel's alter-ego liability.

### III. Conclusion

Plaintiffs Insituform Technologies, LLC and INA Acquisition Corp.'s motion for summary judgment [862] is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED with respect to

Plaintiffs' claim against Defendant Johann Kübel for inducement insofar as that claim relates to sales that occurred after November 10, 2010. Thus, Kübel is jointly and severally liable with Defendant Cosmic-Sondermaschinenbau, GmbH for 2,860 acts of infringement, resulting in $388,960 in damages. The motion is DENIED insofar as it relates to sales made before November 10, 2010. The motion is also DENIED as to the issue of alter-ego liability for either Kübel or Defendant Cosmic Top-Hat, LLC.