Coy TURNER, Jr. and M & W Milling Co., Inc., Appellants,

v.

Billy ANDREW, Jr., Appellee.

No. 2011–SC–000614–DG.

Supreme Court of Kentucky.

Nov. 21, 2013.

John William Walters, Langdon Stites Ryan, Lexington, Counsel for Appellants.

Danny Butler, Greensburg, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

Coy Turner, Jr. and M & W Milling Co., Inc. (collectively "M & W), appeal from a Court of Appeals decision reversing a judgment of the Adair Circuit Court granting them a "judgment Bank on the pleadings." The judgment dismissed the underlying action brought by Billy Andrew, Jr., seeking personal property damages and lost business income resulting from a vehicle collision. The vehicle damaged in the collision was a truck owned by Andrew individually and used in a trucking business operated by the limited liability company "Billy Andrew, Jr. Trucking, LLC." The trial court's dismissal of Andrew's suit was a direct consequence of Andrew's repeated failure to comply with discovery orders. On appeal, M & W contends that (1) the Court of Appeals erred by concluding that the lawsuit was properly brought by Andrew in his individual capacity, despite the fact that the trucking business was operated by the LLC; and (2) the Court of Appeals erred in reversing the trial court's orders excluding Andrew's damages evidence and dismissing his claim. We conclude the Court of Appeals erred in determining that Andrew was entitled to bring a claim in his own name for any trucking business lost by the LLC. Therefore, we reverse that portion of the decision. We further conclude that the discovery sanction imposed on Andrew, specifically the exclusion of all evidence relating to Andrew's damages, was the functional equivalent of an order dismissing both claims. As such, findings of fact and conclusions of law were required pursuant to *Greathouse v. American Nat. Bank and Trust Co.*, 796 S.W.2d 868, 870 (Ky.App.1990). Accordingly, we vacate the remainder of the Court of Appeals Opinion and remand this matter to the trial court for further proceedings consistent with this Opinion.

## RELEVANT FACTS

On April 16, 2007, Coy Turner was driving a feed-truck owned by his employer, M

& W Milling, when a movable auger mounted on the vehicle swung loose into oncoming traffic, striking and seriously damaging a dump truck owned by Billy Andrew. The damaged truck was one of seven dump trucks owned by Andrew and operated by "Billy Andrew, Jr. Trucking, LLC." The LLC, of which Andrew was the sole member, was formed in January 2006, fifteen months prior to the accident. Andrew filed suit against Turner and M & W Milling in January 2008 claiming personal property damage to the truck as well as the loss of "income derived from the use of said motor vehicle owned by [Andrew] and used in the conduct of [Andrew's] business." The LLC was not named as a plaintiff in the lawsuit.

About eight weeks after the complaint was served, M & W filed interrogatories and requests for production seeking information from Andrew relating to his claim. Although responses to those requests were due within thirty days, Andrew failed to respond. Sixty-six days after the discovery requests were served, M & W filed a motion to compel Andrew to respond. A second motion to compel was filed eighteen months later. In that motion, M & W asserted that Andrew had failed to produce tax records for a five-year period; financial documents and calculations pertaining to the earnings derived from the use of the truck involved in the accident; and all documents showing customers of the trucking business from 2005 through 2007. Following a hearing, the trial court granted the motion and ordered Andrew to produce the requested documents by September 17, 2009. The records were not produced. On September 24th, M & W filed a motion to dismiss Andrew's claim pursuant to Civil Rule ("CR") 37.02(2)(c) on the basis that Andrew failed to comply with discovery requests and the order to compel. No ruling was made on the motion.

On October 5, 2009, M & W made two motions for summary judgment, one relating to the property damage, and the other relating to lost business income. The motion for summary judgment on the lost income claim focused on Andrew's repeated failure to respond to discovery requests as to lost business and the fact that any lost business claim belonged to the LLC and not Andrew individually. In the motion seeking summary judgment on the property damage claim, M & W asserted that Andrew had failed to produce any evidence concerning the amount of damage to the truck. The motion further stated that if the court did not grant summary judgment on the property damage claim, then it should enter an order limiting the amount that Andrew was entitled to recover to $22,820.41, an amount that M & W claimed was the cost of repair of Andrew's truck based on an estimate prepared at the behest of M & W's insurer. The trial court entered an order granting the motion for summary judgment as to the lost business income and capping Andrew's claim for property damages at $22,820.41. Thereafter, Andrew filed a motion to alter, amend or vacate the order. Although the trial court's ruling on this motion does not appear in the record, it is apparent that the motion was granted as litigation continued.

On October 22, 2009, M & W made an Offer of Judgment in the amount of $22,820.41, pursuant to CR 68[1] on An-

---

1. CR 68(1) provides: "At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property, or to the effect specified in his offer, with costs then accrued. The offer may be conditioned upon the party's failure in his defense. If within 10 days after service of the offer the adverse party serves written notice that the

drew's property damage claim. There is no evidence of record that Andrew responded to that offer. About a month later, M & W filed a motion in limine to exclude any evidence of lost business income attributable to the out-of-service truck as well as any evidence of property damage to the truck. M & W contended that Andrew failed to comply with the trial court's discovery order and produced no tax or business records pertaining to the relevant time period. They further asserted that the LLC was the only party that could pursue the lost income claim as the real party in interest. The trial court granted the motion. Thereafter, M & W moved for a judgment on the pleadings pursuant to CR 12.03 [2] arguing that "no evidence can be introduced at the trial of this matter to support the entry of a judgment for monetary damages" against M & W. The trial court granted final judgment in favor of M & W on December 7, 2009.

The Court of Appeals reversed the trial court's judgment, concluding that Andrew could properly pursue the lost business claim in his own name because he is the sole owner of the LLC. The Court of Appeals also concluded that the trial court erred in excluding all evidence of property damages and lost business income, and that Andrew had presented sufficient evidence to overcome the motion for summary judgment. The Court of Appeals reasoned that Andrew could establish the lost business income through his own testimony and that of his wife, who assisted with bookkeeping. As to the property damage claim, the Court of Appeals held that Andrew's twenty-one years in the trucking business along with his performance of "routine maintenance on his vehicles" and his observation of the damaged vehicle "may qualify [him] as an expert on property damage to the dump truck." The court also noted that Andrew's exhibit list included a defense witness, the man who had prepared the damage estimate for M & W, which would be sufficient evidence to meet the plaintiff's burden of proof. We granted discretionary review.

### ANALYSIS

**I. For Lost Business Income to the Trucking Business Operated by the LLC, the Only Proper Party to Bring Suit is the LLC.**

A limited liability company is a "hybrid business entity having attributes of both a corporation and a partnership." *Patmon v. Hobbs*, 280 S.W.3d 589, 593 (Ky.App.2009). As this Court stated in *Spurlock v. Begley*, 308 S.W.3d 657, 659 (Ky.2010), "limited liability companies are creatures of statute" controlled by Kentucky Revised Statutes (KRS) Chapter 275. KRS 275.010(2) states unequivocally that "a limited liability company is a legal entity distinct from its members." Moreover, KRS 275.155, entitled "Proper parties to proceedings," states:

A member of a limited liability company shall not be a proper party to a pro-

---

offer is accepted, either party may then file the offer and notice of acceptance, together with the proof of service thereof, and thereupon judgment shall be rendered accordingly, except when the offer is one conditioned upon failure in defense, in which case the judgment shall be rendered when the defense has failed."

**2.** CR 12.03 provides: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on such motion, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided for in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56."

ceeding by or against a limited liability company, solely by reason of being a member of the limited liability company, except if the object of the proceeding is to enforce a member's right against or liability to the limited liability company or as otherwise provided in an operating agreement.

Not surprisingly, courts across the country addressing limited liability statutes similar to our own have uniformly recognized the separateness of a limited liability company from its members even where there is only one member. *See, e.g., O'Reilly v. Valletta*, 139 Conn.App. 208, 55 A.3d 583 (2012) (sole member of LLC lacked standing to bring suit personally where LLC was party to lease and operated the restaurant at issue); *Krueger v. Zeman Construction Co.*, 758 N.W.2d 881 (Minn.App.2008) (individual who was sole member of LLC had no standing to bring business discrimination suit in her own name where relevant contract was between LLC and corporation engaged in construction business); *Bankston v. Tasch, LLC*, 40 So.3d 495 (La.App.2010) (even where LLC has sole member it is entity separate and distinct from that member in terms of procedural capacity); *FTC v. Payday Financial, LLC*, 935 F.Supp.2d 926 (D.S.D. 2013) (limited liability companies organized under South Dakota law are separate and distinct legal entities from their sole member). It is indisputable that KRS 275.010(2) and .155 similarly mandate that Billy Andrew, Jr. Trucking, LLC be the named plaintiff in any suit asserting a lost business income claim rightfully belonging to the LLC.[3]

The Court of Appeals reasoned that because Andrew was the sole owner of the business he was necessarily the real party in interest, a status that allowed him to properly advance the lost profits claim in his own name rather than in the name of the LLC. The theory of interchangeability underpinning this position was explicitly rejected by this Court in *Miller v. Paducah Airport Corp.*, 551 S.W.2d 241 (Ky. 1977) in the context of a solely-owned corporation. In *Miller*, the president of a corporation that operated a cab service brought suit in his individual capacity against an airport challenging the legality of a lease. *Id.* at 242. The Court held that the corporation was "an entity, separate, apart and distinct from [Mr. Miller] himself," despite the fact that Mr. Miller owned the entirety of the corporation's stock. *Id.* This Court concluded that the corporation, and not Mr. Miller in his personal capacity as the corporation's president, was the real party in interest to the claim, declaring that such a distinction "is not trivial nor supertechnical." *Id.* at 243. The same conclusion is mandated here. The LLC and its solitary member, Andrew, are not legally interchangeable. Moreover, an LLC is not a legal coat that one slips on to protect the owner from liability but then discards or ignores altogether when it is time to pursue a damage claim. The law pertaining to limited liability companies simply does not work that way.

 Andrew argued, and the Court of Appeals accepted, that because Andrew is the sole owner of the LLC and the business operated from his residence the LLC can be disregarded. While it is true that there are limited instances where an LLC's separate entity status may be disregarded in the interest of equity, this is not one of those cases. "Piercing the corporate veil is an equitable doctrine invoked

---

3. By contrast, the damaged truck was owned by Billy Andrew personally and he could individually assert the property damage claim.

by courts to allow a creditor recourse against the shareholders of a corporation." *Inter–Tel Technologies, Inc. v. Linn Station Properties, LLC,* 360 S.W.3d 152, 155 (Ky.2012). The doctrine can also apply to limited liability companies. In *Howell Contractors, Inc. v. Berling,* 383 S.W.3d 465 (Ky.App.2012), our Court of Appeals considered whether the veil of an Ohio limited liability company could be pierced to hold members liable for LLC debt under Ohio law, and, for good measure, the court also considered Kentucky law as articulated in *Inter–Tel Technologies.* The facts in *Howell Contractors* were insufficient to justify piercing the LLC veil in favor of the creditor regardless of which state's law applied. 383 S.W.3d at 469–70. However, other states have similarly recognized that, on proper facts, a plaintiff may seek to pierce the defendant-LLC's veil. *See, e.g., Insituform Technologies LLC v. Cosmic Tophat, LLC,* —— F.Supp.2d ——, 2013 WL 4038722 (N.D.Ga.2013) (LLC veil can be pierced to hold member personally liable for LLC debt); *Edmunds v. Delta Partners, LLC,* 403 S.W.3d 812 (Tenn.App.2012) (same).

The facts before us bear no resemblance to the traditional veil-piercing scenario. This is not a situation where an unpaid LLC creditor seeks to pierce the veil of an LLC to reach the personal assets of its member. This is not even what is sometimes referred to as an "outsider reverse" piercing case where the creditor of an individual who is the sole member of an LLC seeks to pierce the veil to get at LLC assets to satisfy the member's personal debt. *See, e.g., Insituform Technologies, LLC,* —— F.Supp.2d at ——– ——, 2013 WL 4038722 at *7–8 (discussing doctrine but noting that Georgia does not recognize reverse veil piercing whereby creditor of an individual member pierces LLC veil to use LLC assets as satisfaction of individual's debt.) There is an "insider reverse" piercing theory, adopted by a very few states, but it is employed in that rare instance where equity is perceived to require disregard of the entity. Thus, the estate of a sole corporate shareholder/LLC member may be allowed to recover as an "insured" under a policy issued to the entity, *Roepke v. Western Nat'l Mutual Ins. Co.,* 302 N.W.2d 350 (Minn.1981), or a sole shareholder or LLC member may be allowed to claim the protection of a usury statute even though the loan was to the entity, *Gelber v. Kugel's Tavern,* 10 N.J. 191, 89 A.2d 654 (1952). *See generally* Gregory Crespi, *"The Reverse–Pierce Doctrine: Applying Appropriate Standards,"* 16 J. Corp. L. 33 (Fall 1990). In all of the limited number of insider reverse piercing cases, strong public policy considerations have been at the heart of the court's decision.[4]

Here, Andrew created an LLC and it appears that it was conducting the trucking business at issue. By law, the only appropriate plaintiff to assert the lost business damages claim was the LLC, a point that was raised in M & W's answer in February, 2008, and then made repeatedly and explicitly throughout the litigation. Nevertheless, Andrew's counsel never moved to amend the complaint to add the

---

4. Kentucky courts have never addressed reverse piercing. However, at least one commentator, Crespi, 16 J. Corp. L. at 48, has concluded that Kentucky would probably not recognize reverse piercing given the Sixth Circuit Court of Appeals decision in *Boggs v. Blue Diamond Coal Co.,* 590 F.2d 655 (6th Cir.1979). There the Court stated unequivocally that the piercing doctrine was an equitable doctrine to be employed by outsiders who would be wronged by the court's failure to acknowledge the realities of a fraudulent corporate structure and it should not be available to the corporate entities to "undo" what they themselves created, *i.e.,* to reverse pierce.

LLC as plaintiff. At the eleventh hour, counsel did produce an Internal Revenue Service Form 1099 showing that Gaddie–Shamrock, LLC, the trucking business's largest customer, had paid Billy Andrew individually in 2007. Significantly, Andrew himself never supplied the relevant tax returns for 2002–2007, as requested, so it is unclear whether that amount really was paid to Andrew individually or whether there was an amended 1099 reflecting payment to the LLC. Also, there are no contracts or other documents that establish exactly who the various customers were contracting with for their hauling jobs.[5]

On remand, if the lost business damage claim survives the trial court's decision regarding discovery sanctions, as discussed *infra*, the trial court should determine if the LCC was conducting the trucking business on April 16, 2007. If it was, M & W are entitled to summary judgment as a matter of law because Andrew personally had no standing to bring the business loss claim in his own name.

## II. The Trial Judge Erred in Dismissing Andrew's Claims as a Discovery Sanction Without Entering Findings of Fact and Conclusions of Law.

The trial court's entry of judgment in favor of M & W was the final stop on a long road that began with M & W trying to obtain discovery from Andrew through interrogatories and requests for production served some eight weeks after the complaint was filed in January, 2008. Those requests were followed by: first, letters from M & W's counsel seeking

documentation and full interrogatory responses; then, two motions to compel, filed approximately two months and then six months after the discovery requests were served; a motion to dismiss as a discovery sanction pursuant to CR 37.02(2)(c) in September, 2009; and the previously-discussed summary judgment motions in October 2009. Eventually a motion in limine seeking to preclude Andrew from introducing any damage evidence was filed by M & W just after the second trial date, November 2, 2009, was continued on Andrew's motion (the first continuance having been at M & W's request). Finally, a motion for judgment on the pleadings pursuant to CR 12.03 was filed on November 30, 2009. On December 7, 2009, the trial court granted that last motion which was in essence a CR 56 summary judgment since it required reference to "matters outside the pleadings." Prior to that time, the trial court had entered at least two orders compelling discovery, a summary judgment in favor of M & W on the lost business income claim and an order limiting recovery of property damage to the $22,820.41 estimate prepared at the request of M & W's insurance company. As noted above, the October 13, 2009 summary judgment was apparently set aside although the record does not reflect as much. However, when the in limine motion was granted on November 25, 2009 and Andrew was precluded from introducing damage proof, the stage was set for dismissal of the entire lawsuit. From a review of the record, it is apparent that the dismissal was, in essence, a sanction for Andrew's repeated failure to provide discovery as ordered by the trial court.[6]

---

5. Notably, the contractual relationship between the corporate entity and other parties was an important factual inquiry in *Miller v. Paducah Airport Corp.*, 551 S.W.2d at 243.

6. The Court of Appeals treated the final order as a summary judgment and proceeded to

determine whether there was a disputed issue of material fact. This narrow focus ignores the record. Andrew had no damage proof to introduce because of the November 29 in limine order which was premised on Andrew's flagrant disregard of the trial court's

It is, of course, within a trial court's discretion to impose sanctions, even severe ones, against a party for failing to comply with discovery orders. Specifically, CR 37.02(2) provides that:

If a party ... fails to obey an order to provide or permit discovery, including an order made under Rule 37.01 or Rule 35, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(a) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(b) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(c) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(d) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

■ Here, the contentious course of discovery prompted at least two orders compelling discovery from Andrew but the final order dismissing was not denominated as a discovery sanction. Eventually, the trial court granted a motion in limine which prohibited Andrew from presenting any evidence concerning the damages to his truck and the alleged lost profits. The in limine motion was plainly premised on Andrew's repeated failure to abide by the trial court's earlier discovery orders. It is thus clear from our review that the final judgment was in reality a discovery sanction. In that circumstance, the trial court was required under *Greathouse v. Am. Nat. Bank and Trust Co.*, 796 S.W.2d at 868 to render findings of fact to support the dismissal. As stated in *Greathouse*, "[t]he reasons for desiring some articulation of the bases for decision have special importance in this context. When such a severe sanction is imposed, values of consistency and predictability, reviewability, and deterrence, outweigh the values of economy and efficiency that may be promoted by allowing inarticulate decisions." 796 S.W.2d at 870 (*quoting Quality Prefabrication, Inc. v. Daniel J. Keating Company*, 675 F.2d 77, 81 (3d Cir.1982)).

■ A trial court "has broad discretion in addressing a violation of its order[s]" regarding discovery, and this Court reviews the trial court's determination of the appropriate sanction for abuse of that discretion. *Wilson v. Commonwealth*, 381 S.W.3d 180, 191 (Ky.2012). Without findings of fact, a meaningful appellate review of the propriety of discovery sanctions is seriously constrained, if not impossible. *See Nowicke v. Central Bank & Trust Co.*, 551 S.W.2d 809 (Ky.App.1977) (discussing the trial court's fact-intensive inquiry supporting the imposition of CR 37 sanctions against a litigant who willfully disregarded discovery procedures). We must therefore remand the matter to the trial court for reconsideration of the appropriate sanctions for Andrew's discovery violations, and for entry of findings of fact to support

discovery orders. The trial court's decision to disallow Andrew's damage proof was a discovery sanction.

the imposition of those sanctions. On remand, the trial court may appropriately reach the same result or a different result.[7]

## CONCLUSION

For the reasons explained herein, the decision of the Court of Appeals is reversed in part, vacated in part, and the matter is remanded to the Adair Circuit Court for additional proceedings consistent with this Opinion.

All sitting. All concur.

---

[7]. We recognize that due to Judge Weddle's death, the decision on remand will be made by a different judge. The record, based on our review, sufficiently documents the course of discovery to allow for a careful review and appropriate ruling, with findings and conclusions, by the current judge.