RENDERED:  OCTOBER 15, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1442-MR

MARK JOSEPH SMITH                                                          APPELLANT

v.
APPEAL FROM BULLITT CIRCUIT COURT
HONORABLE RODNEY BURRESS, JUDGE
ACTION NO. 11-CI-00721

HERITAGE HILL GOLF CLUB                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, DIXON, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Mark Joseph Smith (Smith), *pro se*,[1] brings this appeal from a

July 16, 2019, Order of the Bullitt Circuit Court granting Heritage Hill Golf Club's

---

[1] Mark Joseph Smith (Smith) is a licensed practicing attorney in Kentucky.

(Heritage Hill) renewed motion for summary judgment and dismissing Smith's

negligence complaint.[2]  For the reasons stated, we affirm.

BACKGROUND

This appeal arises from a golf cart accident on May 29, 2010, at

Heritage Hill in Shepherdsville, Kentucky.[3]  Smith was playing golf with five other

players (a sixsome) including Robert Buehner.  The group was operating four

separate electric golf carts provided by Heritage Hill.[4]  Smith had been a member

of Heritage Hill for approximately two years and testified that he regularly played

the golf course as many as five times a week during the golf season.

On the day of the accident, the parties played the first hole without

incident.  The second hole, a par three, has an elevated tee box, and the hole sloped

downward to the green.  There was heavy foliage, including bushes and trees on

both sides of the fairway.  Along the paved cart path to the green, there were

various rock formations adjacent to the path.  The cart path weaved from the right

---

[2] Smith's motion to alter, amend, or vacate pursuant to Kentucky Rules of Civil Procedure 59.05 was denied by Order entered August 21, 2019.  A timely Notice of Appeal was filed on September 20, 2019.

[3] The parties have referred to the golf club and course as Heritage Hills Golf Club throughout this litigation although its actual name is Heritage Hill Golf Club.  We have elected to reference appellee in this Opinion as Heritage Hill Golf Club (Heritage Hill), its legal name, and will correct the record accordingly.

[4] Apparently, golf carts were required for all players playing the golf course.  Two of the golf carts were occupied by two players each, and two of the carts were occupied by one player each.

side of the tee box down the hill adjacent to the rock formations up to the green area, with at least one s-curve in the pathway.

After the six golfers teed off from the second hole, they proceeded down the cart path toward the green. Buehner was alone in the front cart. Smith and another passenger were following Buehner down the path. After Buehner rounded an s-curve adjacent to a rock formation, he inexplicably lost control of the cart. The cart pivoted or flipped over on its left front wheel and subsequently landed on top of Buehner on the cart path. As Smith rounded the same curve, he immediately observed Buehner's cart and Buehner lying on the path before him. To avoid a collision and running over Buehner, Smith swerved his cart to the left of Buehner's cart and Buehner. This evasive action by Smith caused his cart to leave the cart path and also immediately overturn on top of Smith. The passenger in Smith's cart leaped out as the cart was overturning to avoid injury. As a result of the accident, Smith suffered injuries, including a broken arm at the shoulder socket. Smith was transported to a hospital by ambulance for treatment of his injuries.[5]

On May 31, 2011, Smith initiated this negligence action in Bullitt Circuit Court, naming as defendants Heritage Hill, Buehner, and Esurance

---

[5] Robert Buehner also suffered injuries as a result of his golf cart overturning, but he did not file an action seeking damages against Heritage Hill.

Insurance Services, Inc. (Esurance). Esurance was Smith's automobile insurance carrier and presumably he was seeking basic reparation benefits and uninsured or underinsured policy benefits from the carrier. The claims against Esurance were resolved during the litigation and are not relevant to this appeal. The claims against Buehner remain pending in the Bullitt Circuit Court. Although Smith asserted claims that the golf cart Buehner was driving was negligently designed, the golf cart manufacturer was not named a party to this litigation. As concerns Heritage Hill, Smith asserted that the golf cart was not the proper type of cart for use on Heritage Hill's golf course and that the golf course was negligently designed by Heritage Hill, especially as concerns the layout of the second hole.

Subsequent to the filing of the complaint, the parties began exchanging discovery requests in accordance with Kentucky Rules of Civil Procedure (CR) 26.02. On December 30, 2013, Heritage Hill filed its first motion for summary judgment, arguing in part that Smith had failed to timely provide his expert witnesses' report and supporting documents to establish Smith's negligence claims against Heritage Hill. This motion was denied by order entered February 19, 2014, as Smith had provided a report from his expert, Stephen Eisenberg, in January 2014, prior to the hearing on the motion.

The case was mediated in May of 2014, which resulted in the settlement with Esurance. However, the record of this case reflects no activity

after the mediation until the court issued a CR 77.02 notice in October of 2015. Thereafter, the parties apparently spent much of 2016 attempting to depose Stephen Eisenberg, resulting in a motion to compel being filed by Heritage Hill in September of 2016. The parties ultimately agreed to depose Eisenberg in Florida on February 17, 2017. However, at the deposition, Eisenberg failed to produce various documents that he relied upon in giving his expert opinion. When Smith failed to subsequently produce the documents as promised after the deposition, Heritage Hill filed another motion to compel on August 15, 2017. By order entered August 21, 2017, the motion was granted, but Smith failed to timely comply. Pursuant to CR 37.02, Heritage Hill then filed a motion to dismiss on October 17, 2017. After hearing arguments of counsel in February of 2018, the court entered an order on May 9, 2018, denying the motion to dismiss but striking Eisenberg as an expert witness per CR 37.02(2).

Approximately six months later, in November of 2018, Heritage Hill renewed its motion for summary judgment, as Smith had failed to identify another expert witness to establish the negligence claims asserted against the golf club. In response, in January of 2019, Smith identified a new expert, Charles Heath. The renewed motion for summary judgment was then denied by order entered February 5, 2019.

In Smith's expert witness disclosure identifying Heath, his opinion report and supporting documentation were attached therewith. In response, Heritage Hill filed another motion, on February 27, 2019, to reconsider its renewed motion for summary judgment along with a motion to strike Heath as an expert witness. The primary basis for these motions was that Heath's report and opinion were premised primarily upon Eisenberg's opinion report and discovery deposition, which had previously been stricken by the court. Heath had also not inspected the golf course or the alleged defective golf cart. Heritage Hill argued that this conduct was a continuing violation of CR 26.02, as well as numerous orders entered by the court dating back to July 9, 2013. The court conducted another hearing on April 17, 2019, and by order entered July 16, 2019, granted the motion to strike Heath as an expert witness and also granted the renewed motion for summary judgment dismissing the action against Heritage Hill. This appeal followed. Additional facts will be addressed as needed.

STANDARD OF REVIEW

The standard of review upon appeal of an order granting summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citing CR 56.03). Upon a motion for summary judgment, all facts and inferences in the

record are viewed in a light most favorable to the nonmoving party and "all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Thus, a summary judgment looks only to questions of law and we review a trial court's decision to grant summary judgment *de novo*. *Brown v. Griffin*, 505 S.W.3d 777, 781 (Ky. App. 2016); *see also Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 198 (Ky. 2010), *as modified on denial of reh'g* (Nov. 23, 2011). Additionally, when a trial court grants summary judgment based on insufficient evidence, as in this case, review on appeal is also *de novo*. *Ashland Hosp. Corp. v. Lewis*, 581 S.W.3d 572, 577 (Ky. 2019).

ISSUES ON APPEAL

Smith presents a total of three pages of argument in his appellate brief. Based on our review, he appears to be raising two issues on appeal. First, that the court erred in striking his expert witness, Charles Heath, pursuant to CR 37.02.[6] Second, that upon striking Heath as an expert witness, the circuit court erred in granting Heritage Hill's renewed motion for summary judgment pursuant to CR 56. Our review proceeds accordingly.

---

[6] The first expert witness identified by Smith, Stephen Eisenberg, was stricken by order entered May 9, 2018. That order was not raised as an issue in this appeal.

ANALYSIS

We begin our analysis by noting several deficiencies in Smith's brief. In contravention of CR 76.12(4)(c)(i), (ii), and (iii), Smith's brief does not contain an "introduction," "statement concerning oral argument," or "statement of points and authorities." Coupled with the meager three-page argument presented by Smith in this appeal, this Court easily could have stricken Smith's brief pursuant to CR 76.12(8)(a). *See Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) ("It is a dangerous precedent to permit appellate advocates to ignore procedural rules."). We do not take these appellate rules violations lightly. However, given this case has procedurally labored in the circuit court for over eight years, and there remain other unresolved claims against another party below, we have elected at our discretion to consider the merits of the appeal based upon the record presented on appeal. *See Krugman v. CMI, Inc.*, 437 S.W.3d 167, 171 (Ky. App. 2014).

Smith's first argument looks to the striking of Heath as his expert witness regarding the alleged defective design of the Heritage Hill golf course and its alleged defective golf carts. In May of 2018, after some five years of protracted discovery maneuvering and delays regarding Smith's first expert, Stephen Eisenberg, the circuit court struck Eisenberg as an expert witness. The court concluded that Eisenberg and Smith had failed to timely provide various documentation supporting Eisenberg's opinion, as ordered by the court on August

21, 2017. Smith took no actions in obtaining another expert until Heritage Hill renewed its motion for summary judgment in November of 2018. In January of 2019, prior to the hearing on the motion, Smith identified Heath as his new expert. The renewed motion for summary judgment was denied. However, as previously noted, in February of 2019, Heritage Hill renewed its motion for summary judgment again and also filed a motion to strike Heath as an expert, on the premise that Heath's opinion was based upon Eisenberg's opinion report and deposition, which had previously been stricken by the circuit court. Like Eisenberg, Heath was stricken as an expert witness pursuant to CR 37.02(2)(b).

In Kentucky, it is well-established that a trial court has broad discretion in addressing the violation of a discovery order. *Turner v. Andrew*, 413 S.W.3d 272, 279 (Ky. 2013) (citing *Wilson v. Commonwealth*, 381 S.W.3d 180, 191 (Ky. 2012)). This Court reviews a trial court's imposition of sanctions for an abuse of discretion. *Turner*, 413 S.W.3d at 279. An abuse of discretion occurs where the trial court's decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Meyers v. Petrie*, 233 S.W.3d 212, 215 (Ky. App. 2007) (citations omitted).

Permissible sanctions for violation of a trial court's discovery order are set forth in CR 37.02, which is entitled "Failure to comply with order." CR 37.02(2) provides, in relevant part, as follows:

(2) Sanctions by Court in Which Action Is Pending.

If a party . . . fails to obey an order to provide or permit discovery, including an order made under Rule 37.01 [Motion for Order Compelling Discovery] or Rule 35, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(a) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(b) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(c) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]

In this case, the circuit court granted a discovery sanction to disqualify Heath from testifying. Smith makes a one paragraph argument in his brief that Heath was not disqualified for cause under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Daubert* is clearly not applicable to this appeal as Heath's qualifications were not an issue in the case below. Rather, Heath was disqualified by the circuit court because his opinion was based primarily upon Eisenberg's opinion and deposition testimony, which had been

-10-

previously stricken by the circuit court. Heath had never visited or inspected the golf course or the two golf carts involved in the accident. And, his flawed opinion was generated in response to several court discovery orders dating back for almost six years. Effectively, the circuit court grew weary of the continuous discovery delays by Smith in complying with CR 26.02 and struck Heath as an expert witness. Given these circumstances and the facts of this case, we find no abuse of discretion by the circuit court in striking Heath as an expert witness. Curiously, Smith has not raised, nor will we address, some of the factors this Court has previously reviewed regarding the imposition of CR 37.02 sanctions. *See R.T. Vanderbilt Co., Inc. v. Franklin*, 290 S.W.3d 654, 662 (Ky. App. 2009).

As concerns the granting of summary judgment, Smith argues there were genuine issues of material fact as to whether the two golf carts in question were defective and whether the golf course was negligently designed. Interestingly, Smith does not argue on appeal that the granting of summary judgment, which dismissed his case against Heritage Hill, was a sanction under CR 37.02. And, our review indicates that the circuit court granted summary judgment because Smith was not able to prove that Heritage Hill violated its standard of care or was otherwise liable for Smith's injuries. We observe that if entry of the judgment was in fact a discovery sanction, we would be duty bound to remand the case back to the circuit court for specific findings and conclusions of law in

-11-

accordance with *Turner v. Andrew*, 413 S.W.3d 272, 279 (Ky. 2013) and *Greathouse v. American National Bank & Trust Company*, 796 S.W.2d 868, 870 (Ky. App. 1990). Smith has not raised this issue on appeal.

Thus, our review proceeds under CR 56. The alleged defective golf cart issue can be easily dispensed. First, based on Smith's deposition testimony, he admits that his cart was not defective as he intentionally drove off the cart path to avoid hitting Buehner. Smith's Deposition at 217-18. However, he does allege that Buehner's cart brake was defective and contributed to his accident, which ultimately triggered Smith's accident. Smith's Deposition at 217-18. Notwithstanding, at no time during this litigation was Buehner's cart inspected by Smith or any representative on his behalf. Buehner's cart overturned ahead of Smith, causing Smith to leave the cart path and also overturn. There is not one shred of evidence in this record to implicate a defect in Buehner's cart brake. Mere speculation and conjecture about an alleged defect, including the alleged lack of an "auto deceleration feature," do not create a genuine issue of material fact in this case. As a general rule, Smith was obligated to introduce evidence which afforded a reasonable basis for the conclusion that it was more likely than not that the conduct of Heritage Hill was a substantial factor in bringing about Smith's injuries. "A mere possibility of such causation is not enough and when the matter remains one of pure speculation or conjecture, or the probabilities are at best

-12-

evenly balanced it becomes the duty of the court to direct a verdict for the defendant." *Texaco, Inc. v. Standard*, 536 S.W.2d 136, 138 (Ky. 1975).

And, we again note that neither the manufacturer of the golf cart nor the brake system were named parties to this action, which has contributed to the speculative nature of the allegations regarding the golf cart. Absent any competent evidence of the brake defect, including expert testimony, the circuit court properly rendered summary judgment on the defective golf cart claim.

As concerns the defective design of the golf course, we are faced with a more difficult question. The circuit court effectively held that expert testimony was necessary to establish Heritage Hill's standard of care and subsequent liability for Smith's injuries. In other words, an expert witness was necessary for Smith to go forward with his case. When the standard of care is not within the scope of common experience of jurors, it is within the trial court's discretion to require expert testimony. *Baptist Healthcare Sys., Inc. v. Miller*, 177 S.W.3d 676, 680 (Ky. 2005). Heritage Hill supports this supposition, citing this Court to numerous cases, including, *Hyman & Armstrong, P.S.C. v. Gunderson*, 279 S.W.3d 93 (Ky. 2008); *Baptist Healthcare Systems, Inc. v. Miller*, 177 S.W.3d 676; and *Blankenship v. Collier*, 302 S.W.3d 665 (Ky. 2010), to name a few. However, all of these cases look to medical or professional malpractice by licensed professionals. Nothing in the record on appeal indicates that licensed professionals

were involved in the design or the construction of the golf course. Thus, the question arises whether under Kentucky Rules of Evidence (KRE) 702, expert testimony is appropriate or necessary to assist the trier of fact in this case to understand the evidence or determine any factual issue in regards to the negligent design of the course. The circuit court's order of July 16, 2019, does not address this issue. The necessity of expert testimony obviously was Heritage Hill's position from the outset of the case, which Smith never objected to or otherwise challenged below, or in this appeal. If expert testimony is not necessary in this case, then the striking of Smith's expert would not have warranted summary judgment on the standard of care or liability issues and reversal would be warranted. Again, Smith did not raise this issue below or in this appeal.

This Court has spent numerous hours reviewing the record below, including twelve volumes of pleadings, two lengthy deposition transcripts, and numerous video hearings. While not addressed by the parties or the circuit court in its judgment, the case alleged against Heritage Hill, regarding Smith's injuries while playing golf thereon, clearly looks to a premises liability negligence action under applicable Kentucky law. As an appellate court, we are always mindful that a judgment of a lower court can be affirmed for any reason found in the record. *Fischer v. Fischer*, 348 S.W.3d 582, 591 (Ky. 2011), *abrogated on other grounds by Nami Resources Co., L.L.C. v. Asher Land and Mineral, Ltd.*, 554 S.W.3d 323,

-14-

339 n.10 (Ky. 2018). Likewise, if we become aware of another reason to affirm the trial court, even if based upon different grounds, we are obligated to do so. *Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co.*, 434 S.W.3d 489, 496 (Ky. 2014). Thus, a premises liability analysis is warranted.

We begin by noting that Smith was an invitee on Heritage Hill golf course on May 29, 2010. Smith alleges this in the first sentence of his brief, and Heritage Hill has not denied or disputed this fact. Also, as a member, Smith had played the course on numerous occasions without incident.[7]

Prior to 2010, the facts of this case might have easily fit into an open and obvious doctrine analysis that would have precluded any liability by Heritage Hill to Smith for injuries from the golf cart accident. Under this doctrine, a land possessor could not be held liable to a visitor on his property, regardless of the visitor's status, who was injured by open and obvious dangers that were known to the visitor or otherwise so obvious that the visitor would be expected to discover them. *Rogers v. Prof'l Golfers Ass'n of Am.*, 28 S.W.3d 869 (Ky. App. 2000).

However, the Kentucky Supreme Court has modified the open and obvious doctrine beginning with *Kentucky River Medical Center v. McIntosh*, 319

---

[7] In this case, Smith has admitted that he played the course, including the second hole, on numerous occasions and was familiar with the layout of the hole, including the cart path.

-15-

S.W.3d 385 (Ky. 2010) and its progeny.[8]  In *McIntosh*, the Kentucky Supreme

Court adopted the position of the *Restatement (Second) of Torts* with respect to

open and obvious conditions.  That position is stated as follows:

> A possessor of land is not liable to his invitees for
> physical harm caused to them by any activity or
> condition on the land whose danger is known or obvious
> to them, unless the possessor should anticipate the harm
> despite such knowledge or obviousness.

RESTATEMENT (SECOND) OF TORTS § 343A(1) (2020).

The Supreme Court further expounded upon its position in *McIntosh*

in *Shelton v. Kentucky Easter Seals Society, Inc.*, 413 S.W.3d 901 (Ky. 2013).  In

explaining the retreat from the open and obvious doctrine, the Court stated:

> Traditionally, the open-and-obvious doctrine
> stated, "land possessors cannot be held liable to invitees
> who are injured by open and obvious dangers."  As a
> result, if a plaintiff was injured by an open and obvious
> hazard, the landowner, regardless of any negligent
> conduct on its part, had a complete defense to any
> asserted liability. But, in *McIntosh*, we noted that a
> growing majority of states has moved "away from the
> traditional rule absolving, *ipso facto*, owners and
> occupiers of land from liability for injuries resulting from
> known or obvious conditions" and, instead, adopted the
> *Restatement (Second) of Torts*'s approach to allow the
> jury to assess comparative fault.

*Id.* at 906 (citations omitted).

---

[8] *See also Dick's Sporting Goods, Inc. v. Webb*, 413 S.W.3d 891 (Ky. 2013); *Shelton v. Kentucky Easter Seals Soc'y, Inc.*, 413 S.W.3d 901 (Ky. 2013); *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288 (Ky. 2015); and *Goodwin v. Al J. Schneider Co.*, 501 S.W.3d 894 (Ky. 2016).

In *Shelton*, 413 S.W.3d 901, the Supreme Court went on to explain:

> A target for criticism for well over fifty years, the open-and-obvious doctrine persists in our jurisprudence. In *McIntosh*, we took steps to ameliorate the harsh effect of the open-and-obvious doctrine for injured persons seeking recovery. We adopted the *Restatement (Second) of Torts* Section 343A and held that "lower courts should not merely label a danger as 'obvious' and then deny recovery. Rather [the courts] must ask whether the land possessor could reasonably foresee that an invitee would be injured by the danger." According to Section 343A, harm to the invitee is reasonably foreseeable despite the obviousness of the condition "where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious or will forget what he has discovered, or fail to protect himself against it" and, also, "where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." Under this modern approach to cases dealing with open-and-obvious dangers, there is no duty for the land possessor to warn of the dangers; but this "does not mean there is no duty at all[.]" Indeed, "even where the condition is open and obvious, a landowner's duty to maintain property in a reasonably safe condition is not obviated[.]"

*Id.* at 907 (citations omitted).

Despite these modifications to the open and obvious doctrine, the Supreme Court has not closed the door to summary judgment in premises liability actions. As explained in *Shelton*, 413 S.W.3d at 904, "a court no longer makes a no-duty determination but, rather, makes a no-breach determination, dismissing a claim on summary judgment or directed verdict when there is no negligence as a

matter of law, the plaintiff having failed to show a breach of the applicable duty of care." Thus, "when the open-and-obvious doctrine relieves a defendant of liability, it is not because damages are not recoverable as a matter of policy (as the case with contributory negligence). Instead, the defendant is not liable because he has satisfied the standard of care in the given factual scenario." *Id.* at 910.

The Supreme Court further stated in *Shelton* that:

It is important to emphasize that summary judgment remains a viable concept under this approach. The court's basic analysis remains the same because, on a motion for summary judgment, a court must still examine each element of negligence in order to determine the legitimacy of the claim. But the question of foreseeability and its relation to the unreasonableness of the risk of harm is properly categorized as a factual one, rather than a legal one. This correctly "examines the defendant's conduct, not in terms of whether it had a 'duty' to take particular actions, but instead in terms of whether its conduct *breached* its duty to exercise the care" required as a possessor of land. If reasonable minds cannot differ or it would be unreasonable for a jury to find breach or causation, summary judgment is still available to a landowner. And when no questions of material fact exist or when only one reasonable conclusion can be reached, the litigation may still be terminated.

*Id.* at 916 (citations omitted); *see also Goodwin v. Al J. Schneider Co.*, 501 S.W.3d 894, 898-99 (Ky. 2016).

In this case, the unrefuted evidence in the record below establishes that Smith lost control of his golf cart when he intentionally left the cart path to

avoid hitting Buehner and his cart. Smith has alleged no defects of the premises, other than course design, which caused his accident and injuries. And, there is absolutely no evidence in the record to support any allegation of defective course design. Based on the record before this Court and the unrefuted facts, we cannot conclude that Heritage Hill breached any duty of care or otherwise acted unreasonably in regard to Smith on May 29, 2010. The only reasonable conclusion we can reach is that Heritage Hill was not the legal cause of injuries suffered by Smith and was entitled to a summary judgment on Smith's claims. However, we caution that this Opinion does not address or affect any claims against Buehner, including any alleged negligence by Buehner in the operation of his golf cart at the Heritage Hill golf course on May 29, 2010.

Finally, we will address Smith's one paragraph argument that Heritage Hill's motion to reconsider its motion for summary judgment filed on February 27, 2019, was improper and in violation of CR 59.05, having been filed more than ten days after the February 5, 2019, order. We reject this argument as being totally without merit. The application of CR 59.05 is limited to judgments. The February 5, 2019, order was not a judgment, but rather an interlocutory order addressing a CR 56 motion and a discovery motion. The civil rules do not prohibit a court from considering meritorious motions filed during the course of litigation, nor has Smith cited any legal authority to the contrary.

## CONCLUSION

In conclusion, we affirm the circuit court's July 16, 2019, order striking Charles Heath as an expert witness pursuant to CR 37.02 for the reasons stated. We also affirm the entry of summary judgment for Heritage Hill, albeit based upon different grounds from that of the circuit court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Mark Joseph Smith, *Pro Se*
Louisville, Kentucky

BRIEF FOR APPELLEE:

David K. Barnes
Louisville, Kentucky