RENDERED: AUGUST 22, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1177-MR

ANN PINSKI, D.P.M.                                   APPELLANT

                     APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE MELISSA L. BELLOWS, JUDGE
                     ACTION NO. 12-CI-005582

SHARON LEVINE, INDIVIDUALLY
AND IN HER CAPACITY AS
EXECUTOR OF THE ESTATE OF
ROBERT G. LEVINE                                 APPELLEE

AND

NO. 2024-CA-0320-MR

ANN PINSKI, D.P.M.                                   APPELLANT

                     APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE MELISSA L. BELLOWS, JUDGE
                     ACTION NO. 12-CI-005582

SHARON LEVINE, INDIVIDUALLY
AND IN HER CAPACITY AS
EXECUTOR OF THE ESTATE OF
ROBERT G. LEVINE                                 APPELLEE

\*\* \*\* \*\* \*\* \*\*

BEFORE: A. JONES, McNEILL, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Ann Pinski, D.P.M., brings Appeal No. 2023-CA-1177-MR and Appeal No. 2024-CA-0320-MR from an August 31, 2023, Opinion and Order and a February 20, 2024, Order of the Jefferson Circuit Court. We reverse and remand Appeal Nos. 2023-CA-1177-MR and 2024-CA-0320-MR.

Pinski and Robert Levine, D.P.M, were podiatrists and worked together in their podiatry practice – Podiatric Physicians of Kentucky, P.S.C. (PPK). Each owned fifty shares of stock in PPK, which equated to 50 percent ownership for each. On March 2, 2012, Pinski, Levine, and PPK entered into a Stock Purchase, Separation, and General Release Agreement (Agreement). Therein, Levine purchased Pinski's fifty shares of stock in PPK for $205,000 to be paid in three installments. Additionally, in the Agreement, Pinski agreed that PPK had paid her all payments, expenses, and salary and that she was not entitled to additional payments, compensation, or distributions from PPK or Levine.

Upon execution of the Agreement, Levine paid the first installment of $102,500; thereafter, Pinski cashed four checks on PPK's corporate checking account totaling $16,500. These checks were written on PPK's account by Pinski

and made payable to herself. The checks were all dated in January of 2012, before the Agreement was executed and while Pinski was authorized to write checks on PPK's account. When Levine discovered that Pinski had written and cashed the checks, Levine setoff[1] or subtracted $21,500 from the second installment due Pinski under the Agreement.

On October 19, 2012, Pinski filed a Complaint against Levine in the Jefferson Circuit Court (Action No. 12-CI-05582). Therein, Pinski claimed, *inter alia,* that Levine breached the Agreement by failing to fully pay for her shares of stock in PPK. Pinski particularly asserted that Levine improperly set off $21,500 from the second installment payment and sought to recover said sum.

Levine filed an Answer and Counterclaim. In the Counterclaim, Levine asserted that Pinski took an x-ray machine that was owned by PPK, wrote a series of checks on PPK's checking account without his knowledge, and cashed those checks in violation of the Agreement. Levine maintained that the x-ray machine and checks' total value was $21,500, and he had a right to set off such sum against the amount he owed as payment for Pinski's shares of stock in PPK.

During pendency of the case, Levine became ill and passed away in June of 2017. Levine's wife, Sharon Levine, was appointed executrix of his estate

---

[1] Setoff generally refers to "[a] debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor; the counterbalancing sum owed by the creditor." *Setoff*, BLACK'S LAW DICTIONARY, 1648 (11th ed. 1995).

(the Estate).  Pinski then filed a claim for $143,125 with the Estate, which was disallowed in February of 2018.[2]  Kentucky Revised Statutes (KRS) 396.055.  Thereafter, on March 26, 2018, Pinski filed a complaint in the Jefferson Circuit Court (Action No. 18-CI-01756) against the Estate for disallowance of the claim.  KRS 396.055.  Pinski asserted that the Estate improperly disallowed her claim.  Pinski maintained that Levine breached the Agreement and sought to recover the $21,500 withheld by Levine.  She also alleged that Levine committed fraud, breached fiduciary duties, and sought punitive damages.

On January 13, 2020, the circuit court consolidated Action Nos. 12-CI-05582 and 18-CI-01756.  The circuit court rendered summary judgment for the Estate on all claims except the claim that Levine breached the Agreement for which his Estate owed Pinski $21,500, the amount withheld by Levine from the second installment payment.  The court heard the matter in May of 2023, without a jury per Kentucky Rules of Civil Procedure (CR) 52.01.  By Opinion and Order entered August 31, 2023, the circuit court concluded that Levine had the right to set off the $21,500 from the second installment and Pinski was not entitled to recover same from the Estate.  In particular, the court reasoned:

> A simple reading of the contract [Agreement]
> states that Pinski was not owed any monies after the sale

---

[2] The claim against Robert G. Levine's Estate included moneys withheld by Levine in his second payment to Ann Pinski, D.P.M., interest thereon, attorney's fees, costs, and an unliquidated claim of $100,000 for fraud and misrepresentation.

of PPK – "she (Pinski) is not entitled to any additional payments, dividends, compensation, or distributions from Levine and/or PPK." AGREEMENT: Acknowledgement section (1) (f). The check was not deposited until after the closing of the business [PPK] sale. The contract of sale immediately made Dr. Levine the only owner of PPK, and therefore, Pinski was not entitled to the funds she withdrew from the business account after closing.

. . . .

Plaintiff puts forth the argument that she was both an employee and shareholder of PPK, and that there were monies owed to her for reimbursements for expenses and patient visits. Pinski claims that these are business activities and that Defendant misinterprets the UCC and paints the false picture that the checks were not negotiable instruments. Pinski argues that the date on the checks, and not the actual negotiated payment received, indicates the constructive time of payment. Since the checks were dated prior to the Agreement of sale, then they would constitute valid payments under this theory. The Court, however, is not persuaded that this rationale is applicable here, as the above UCC citation controls here, and states that the actual payment is when the funds were negotiated or actually deposited/received. As this payment occurred after the closing, Pinski is not entitled to the funds, per the Agreement.

Turning to Pinski's additional argument that the Estate lacks standing to assert a claim for offset, she cites the *Owens* case to support this contention. *Owens v. C.I.R.*, 568 F.2d 1233, 1238 (6th Cir. 1977). Pinski asserts that the estate lacks standing to assert a claim owned by PPK, and that therefore, the Estate is not legally justified in withholding the money owed to Dr. Pinski. In the *Owens* case, the Court held that the corporate assets are the corporation's property and not the shareholders. *Id.* The holding in *Owens* sheds little

-5-

light on the case at bar. *Id.* Again, the breach of the agreement (Pinski's checks being deposited), occurred directly after the sale of the corporation. Pinski's argument focuses on the fact that PPK was never brought in as a party, and that the Estate, which is not the corporation, had no legal right to withhold the remaining funds owed to Dr Pinski. Essentially, Pinski maintains that there is no standing for the estate to offset Dr. Levine's obligation to pay Dr. Pinski for what she claims is owed to her. The Court is not persuaded by this argument. Even though Sharon Levine testified that she had no authority to act for PPK, the deposit of the checks was a clear violation of the Agreement and the Agreement was still in effect when the checks were deposited. The Agreement stated clearly that "she (Pinski) is not entitled to any additional payments, dividends, compensation, or distributions from *Levine and/or PPK*." Agreement (1) (f), emphasis added. This informs the Court that not only PPK was involved in offsetting the payment here, but Dr. Levine as well. The withholding of the $21,500 by Dr. Levine happened on June 2, 2012, while Dr. Levine passed away on June 8, 2017. As the Court ruled earlier, the UCC applies, and the Court finds that the Estate does have standing to assert a claim for offset. This claim is without merit.

Opinion and Order at 8-10. Thereafter, in a February 20, 2024, order, the circuit court awarded Levine $34,592.25 in attorney's fees as a prevailing party under Section 17 of the Agreement. These appeals follow.

## Standard of Review

The circuit court tried this case without a jury pursuant to CR 52.01. Thereunder, the court's findings of fact shall not be set aside unless clearly erroneous. In other words, the findings will not be disturbed if supported by

-6-

substantial evidence of a probative value. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Issues of law are reviewed *de novo*. *J.P.T. v. Cabinet for Health and Family Services*, 689 S.W.3d 149, 158 (Ky. App. 2024). Our review proceeds accordingly.

We shall initially address Appeal No. 2023-CA-1177-MR and then Appeal No. 2024-CA-0320-MR.

### Appeal No. 2023-CA-1177-MR

Pinski argues the circuit court erred by determining that Levine had the right to set off $21,500 from the second installment payment under the Agreement resulting in the Estate properly disallowing payment of Pinski's claim. For the reasons stated, we agree.

CR 17.01 requires an action to be maintained by the real party in interest. A real party interest is the one who by substantive "law ha[s] the right sought to be enforced." 11 Leslie W. Abramsom, *Kentucky Practice*, *Civil Procedure Forms* § 50:2 (2025). Stated differently, the real party in interest is one "who will be entitled to the benefits of the action upon a successful termination thereof; one who is actually and substantially interested in the subject matter." *Combs v. Richards*, 63 S.W.3d 193, 194 (Ky. App. 2001).

Under the terms of the Agreement, Levine, individually, agreed to purchase Pinski's shares of stock in PPK for $205,000 and was to make three

-7-

installment payments to Pinski. After making the first installment payment of $102,500, Levine did not make the full second installment payment of $50,000; rather, he subtracted or set off $21,500 from the amount owed in the second installment.

To justify the setoff, Levine claimed that in January 2012, Pinski wrote checks on the PPK checking account to herself without disclosing same and waited to cash the checks until after execution of the Agreement in March of 2012. These checks totaled $16,500. Levine also claimed that Pinski took an x-ray machine owned by PPK, which together with the checks totaled $21,500.

PPK was a professional service corporation and was incorporated under KRS 274.015. As a professional service corporation, PPK was a separate legal entity from its shareholders. KRS 274.015(2); KRS 271B.3-020; KRS 271B.6-220; s*ee also Turner v. Andrew*, 413 S.W.3d 272, 276 (Ky. 2013); *Miller v. Paducah Airport Corp.*, 551 S.W.2d 241, 242-43 (Ky. 1977); *Holsclaw v. Kenilworth Ins., Co.*, 644 S.W.2d 353, 355 (Ky. App. 1982). On this point, the law is clear that a corporation and its shareholder are not to be considered legally interchangeable but are separate and distinct legal entities. *Andrew*, 413 S.W.3d at 276; *see also* 18 C.J.S. *Corporations* § 6 (2025). PPK was also a separate party to the Agreement.

It is uncontroverted that PPK owned the x-ray machine and that the checks were written on PPK's checking account. As a result, PPK, not Levine, was the real party in interest to assert any claims against Pinski to recover PPK property or monies owed. Accordingly, Levine was not entitled to subtract or set off the $21,500 from the second installment payment owed by Levine, individually, under the Agreement. *See Turner*, 413 S.W.3d at 276; *Miller,* 551 S.W.2d at 242-43; *Holsclaw*, 644 S.W.2d at 355. The circuit court committed reversible error for concluding otherwise.

Therefore, we reverse the circuit court's August 31, 2023, Opinion and Order concluding that Levine had a right to set off $21,500 against the second installment payment owed to Pinski and that Pinski was not entitled to judgment for the amount owed against Levine's Estate. On remand, the circuit court shall render a judgment for $21,500 for Pinski against the Estate, plus any accrued interest thereon.

### Appeal No. 2024-CA-0320-MR

Pinski argues that the circuit court erred by awarding $34,592.25 in attorney's fees. As we have reversed the circuit court's Opinion and Order in Appeal No. 2023-CA-1177-MR, the circuit court's order awarding attorney's fees to the Estate as the prevailing party under Section 17 of the Agreement is, likewise, reversed.

-9-

For the foregoing reasons, we reverse and remand Appeal Nos. 2023-CA-1177-MR and 2024-CA-0320-MR, for proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

C. Thomas Hectus
Louisville, Kentucky

BRIEFS FOR APPELLEE:

Paul Hershberg
Louisville, Kentucky